[Civ. No. 14820. First Dist., Div. Two. May 16, 1952.]

LOUISA GRACE et al., Respondents, v. MARY M.
RODRIGUES, Appellant.

A. Q. Lomba and Fred B. Hart for Appellant.

J. Elwood Andresen for Respondents.

GOODELL, J.—The respondents, who are sister and brother, sued the appellant, their sister, seeking a decree establishing that she holds the title to a piece of improved real property on 90th Avenue in Elmhurst in trust for respondents and herself in equal shares. The complaint alleges that on August 9, 1938, Louisa M. Govey, the mother of the parties, was the owner of the property and on that day ''in reliance upon the defendant's oral promise that she would after the death of said Louisa M. Govey, divide the said property equally between herself and the plaintiffs, the said Louisa M. Govey executed and delivered to defendant a deed conveying the . . . property to said defendant'' which was recorded August 17, 1939, and that in 1946 appellant ''repudiated the aforesaid trust and agreement and refuses to divide said property and claims to be the owner thereof.''

The answer admits that on August 9, 1938, the mother owned the property and that the deed was recorded as alleged, but denies the other allegations and pleads ''that there were no conditions attached to the said conveyance and no trust was intended or created upon said premises by the grantor; there were no promises by grantee either express or implied, that

after the death of grantor the grantee would divide the said premises with the plaintiffs herein.''

The court found that a confidential relationship existed between the mother and appellant; that ''no consideration was paid by the defendant to her mother for the conveyance . . . and said conveyance was made . . . to said defendant upon her promise to divide the proceeds realized from a sale of said property after the death of said Louise M. Govey and the payment of all debts of said Louise M. Govey, equally between plaintiffs and the defendant'' and that on July 7, 1946, defendant ''repudiated her trust agreement and refused to divide the property or to sell the same and divide the proceeds with the plaintiffs and since said date defendant claims to be the owner of said property.'' The judgment decreed that appellant holds the title in trust for Louisa Grace, Manuel M. Govey and herself in equal shares.

The only question presented is whether the evidence is sufficient to support the findings.

 Appellant attacks the finding that a confidential relationship existed between her and her mother, claiming that there is no evidence to support it. Mrs. Grace testified that appellant managed the business affairs of her mother because the latter ''couldn't do much writing English at all''; also that appellant ''kept everything, nobody could get hold of them [deeds], she put it in the bank in the safe deposit box so nobody could get their hands on anything.'' Respondent Govey testified that appellant took care of the business affairs of both their mother and father. All this testimony stands uncontradicted, and of course is sufficient to support the finding.

 With respect to the finding that no consideration was given for the deed, appellant testified that she had given her mother $500 for the deed, and admitted of course that the property was worth more than that. The record shows that it was valued at from $18,000 to $21,000. Later she admitted that she did not give her mother this $500 in cash or on the date of the deed, but at ''certain times when she was sick, I had to pay her hospital bills—I mean her sickness, the doctor bills and food''; in short, it appears that the $500 claimed to have been paid was not in a lump sum but was spread over some time. Respondent Govey testified that during a conversation with appellant at her home he said ''I see you gave mama $10 for this property'' to which she replied

"I didn't give her nothing." The finding that no consideration for the deed was given by appellant is amply supported.

■ With respect to the circumstances attending the delivery of the deed, respondents rely principally, if not entirely, upon admissions made and assurances given by appellant to them, all of which appellant denies. The mother died on December 30, 1945, which was over seven years after the deed from her to appellant, and none of the admissions or assurances on which respondents rely was earlier than about the time of the mother's death.

Mrs. Grace testified that while appellant was in the hospital (which was about the time of the mother's death) appellant "said when she came out she would make everything all right." She testified further that on July 7, 1946, in the presence of respondent Govey, his wife, and Mrs. Rose Almeida appellant had at first said "my mother said to sell the property and divide it between my brother and I . . . Then after, when she was offered this price I said, 'Why don't you sell it?' She said 'By the time I give you a little bit and brother, I will have nothing.' So then we left her alone." She also testified that after she had taken care of appellant after her hospitalization and the latter had left the Grace home she said: "I will give you what's coming to you, you have been very good to me." Mrs. Grace was asked on cross-examination if she did not say to Mrs Augusta Lopes that it was right that appellant should have the property since she took care of their mother, and answered: "No sir, I said my sister should have at least half of the property and split the other half between us, . . . for taking care of her for ten years." On rebuttal she made a somewhat similar statement. When asked if she did not say that the property belonged to appellant and that respondents had no claim on it she replied "Never. I said she should get a little more because she took care of the folks we shouldn't get as much as her," and again, "No, she should get more than the two of us, because she stayed with them longer . . . I always said that and I will always stick with that."

Respondent Govey testified that at the conversation to which Mrs. Grace referred at which Mrs. Almeida was present, "there had been quite a little conversation in reference to being equalized between us three" and that appellant had said "that it was no more than right that each one of us should have our share as my mother wanted it." On cross-examination he said: "I told her I wanted her to live up with what

she said my mother wanted. Q. And she said she was not going to do it? A. She said, no.'' He also testified that when he was called by appellant to his mother's deathbed appellant said ''Let's not have any trouble . . . you know mother said this property was for the three of us.''

Mrs. Rose Almeida testified that she was present at a conversation where there were present respondent Govey, his wife, ''Joe Grace, me and her'' when appellant had returned from the hospital after her illness, at which appellant said ''just as soon as she gets better she is going to give Manuel—put it for sale and they were going to divide it among the three, 'Because Louise has been taking care of me and she has been so good,' she said, 'Manuel is so good' . . . She said she was going to divide it up . . .'' She testified that later on they met and appellant said ''I ain't going to give them nothing'' to which the witness replied ''You said you were going to give it half and half, divide it up.'' On cross-examination she said ''Yes, she was going to divide it up.'' And again, on cross-examination ''She told me she was going to divide it up; the last time she told me, her husband was there . . .''

Mrs. Irene Govey, wife of respondent, testified that she was at Mrs. Grace's home when appellant was sick there and that they were talking about the property, and appellant said ''Well, I will sell the property and divide it between you and Louisa and the three of us . . . They said that was agreeable with them.''

Appellant testified to at least two conversations with respondents, the first at Mrs. Grace's home in early February, 1946, on returning from the hospital and the other on July 7, 1946, on 90th Avenue. She denied that at any time, in either her home or her sister's home, she had promised to give them a share in this property. She explained that at the February meeting ''they wanted me to sell—they were forcing me to get a real estate man to put my property for sale.'' She repeated her denial of any promise to respondents. With respect to the deathbed incident she said she sent for her brother because she felt it to be her duty, but definitely denied having said ''Mother says this property is for the three of us'' and said that the property was not discussed at all. She testified that at the last meeting, on July 7, 1946, she told respondents that ''if they did what was right, they wouldn't be sorry'' and that what she meant was ''if they do what was right, after my death I would do what was right, that's

all. . . ." On redirect she testified that her mother in discussing the deed did not say "to give it to your brother," and that when the notary asked the mother if she wanted $3.00 in documentary stamps on the deed "She said as long as it protected me."

Rose Marie Davis, the stepdaughter of appellant, testified: "Q. Did your mother make any promise to either one of them to give them any interest in the property standing in her name? A. I never heard anything about a promise. Q. Did Mrs. Grace say she wanted the property divided? A. No, Louise always said 'I have no right to anything, neither has my brother, because Mamie has taken care of my mother for so many years.'" She testified also that after respondent Govey left on July 7, "his sister said, 'Well, we have no right to say anything, we have no right to anything, to be here.'"

In rebuttal Mrs. Grace testified that Mrs. Lopes was not present at the meeting on July 7. She also testified that Mrs. Davis was not present during all of that meeting but went outdoors to take some pictures. She denied that she had ever discussed this matter with Mrs. Lopes.

The issue tendered by the complaint was whether, when the mother made the deed to appellant, it was made in reliance upon the defendant's oral promise that she would after the death of the mother, divide the property equally between herself and her sister and brother. There was no attempt by respondents to prove anything that was said by the mother to appellant imposing such trust on appellant, or the latter's acceptance of it, other than by the testimony just summarized of admissions and assurances made about the time of the mother's death and during the six or seven months following it.

The first of these, asserted by respondent Govey and flatly denied by appellant, was the deathbed episode where he quotes appellant as saying "Let's not have any trouble . . . you know mother said this property was for the three of us." If the court accepted his version and rejected hers, you have a clear-cut admission against appellant's proprietary interest, bearing in mind that legal title then stood in her name by virtue of a deed absolute on its face made seven years earlier. This if believed went far toward supporting the finding of a trust relation. However, it is buttressed by a number of other admissions testified to by not only the respondents but by their witnesses, and it is to be implied from the findings that the trier of fact accepted them and rejected appellant's

denials and the testimony of her witnesses. The record presents simply another case of conflicting testimony, with respect to which the rule is familiar.

Appellant's counsel in moving for a nonsuit said: ". . . its a mere promise here that she promised to divide her property, it wasn't a consideration whatsoever, therefore, they have not made a prima facie case." Appellant still adheres to this theory, arguing on this appeal as though she had received the deed from her mother with no trust imposed and no conditions attached, and then seven years later had magnanimously promised her sister and brother to divide equally with them, without any consideration moving from them to her. The pleadings tender no such issue; the evidence makes no such case, and the case was tried on no such theory.

Appellant argues that in a case such as this the burden rests on the plaintiffs to show by clear and convincing evidence that a deed or other transfer absolute on its face is not what it purports on its face to be. That is true, but as was said in *Hansen* v. *Bear Film Co., Inc.*, 28 Cal.2d 154, 173 [168 P.2d 946]:

"Although it is necessary, in order to establish a trust, to offer clear and convincing proof, such proof may be indirect, consisting of acts, conduct, and circumstances (*Airola* v. *Gorham*, 56 Cal.App.2d 42, 49 [133 P.2d 78]; *Kobida* v. *Hinkelmann*, 53 Cal.App.2d 186 [127 P.2d 657]; *Cooper* v. *Cooper*, 3 Cal.App.2d 154 [39 P.2d 820]), and the question whether the showing is clear and convincing is primarily one for the trial court (*Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [147 P.2d 583]; *Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732])." Such evidence need not be "conclusive" (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 444-446 [159 P.2d 958]).

Appellant contends that the court had no power to declare a trust since the estate of Mrs. Govey had not gone through probate. The evidence clearly shows that the deed was made on August 9, 1938, that she died on December 30, 1945, and that on her death there was no property left subject to probate. It had been conveyed by the deed now in question.

This brings us to another point made by appellant, i. e., that neither the complaint nor the findings state the death of Mrs. Govey, the mother. The findings contain a statement showing that both parents were deceased.

Another point made by appellant is that "No title in Louise M. Govey is shown at the time of this deed to appel-

lant or even later, and therefore there is no property as to which a trust can be declared.'' The complaint alleges that on the date of the deed Louisa M. Govey was the owner of the property. The answer expressly admits this, hence there was no issue as to that (*Munfrey* v. *Cleary*, 75 Cal.App.2d 779, 784 [171 P.2d 750]), and it ''must be treated as admitted on appeal'' (*Palpar, Inc.* v. *Thayer*, 82 Cal.App.2d 578, 583 [186 P.2d 748]).

Appellant complains that the finding that this was community property is without any support in the record. The complaint did not allege that it had been community property and such allegation would have been surplusage, since the father had conveyed to the mother and she admittedly held title when she deeded to appellant, hence the finding respecting community property was wholly outside the issues and may be disregarded.

The court decreed that appellant holds the title to the property in trust for the two respondents and herself in equal shares. There are numerous cases in this state enforcing constructive trusts under similar circumstances and it suffices simply to cite 25 California Jurisprudence, pages 159-161, section 31, where the rule is stated.

The judgment is affirmed.

Nourse, P. J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied June 14, 1952, and appellant's petition for a hearing by the Supreme Court was denied July 10, 1952.