[S. F. No. 8088.   In Bank.—August 27, 1917.]

THE PEOPLE, Plaintiff, v. CALIFORNIA SAFE DEPOSIT AND TRUST COMPANY (a Corporation), et al., Defendants; O. M. GOLDARACENA, Intervening Petitioner and Appellant; E. DE LOS MAGEE, Receiver, etc., Respondent.

TRUSTS — FOLLOWING AND RECOVERY OF FUNDS.— The beneficiary of a trust may follow and recover the trust fund if any property in the hands of the trustee or of those taking with notice can be identified either as the original property of the *cestui que trust* or as the product of it.

ID.—LOSS OF IDENTITY OF FUND—POSITION OF BENEFICIARY.—Where the identity of the trust fund has been lost, the beneficiary is relegated to the position of a general creditor, and must share *pro rata* with other general creditors.

ID.—COMMINGLING OF FUNDS—PRESUMPTION.—If a trustee mingles his own funds with the trust fund, and thereafter draws from time to time from the commingled mass, it will be presumed that the moneys so drawn were from his own portion of the fund, rather than from the moneys held by him in trust, the rule resting upon the underlying presumption that a person is innocent of crime or wrong.

ID.— INVOLUNTARY TRUST ARISING FROM FRAUD — DOCTRINE OF COMMINGLING OF FUNDS INAPPLICABLE.—The doctrine that a trustee who mingles his own funds with trust funds and thereafter draws from the commingled mass will be presumed to have drawn from his own funds has no application to a case where a party has fraudulently induced another to enter into a contract, and holds what he has received thereafter in trust, not by virtue of any contractual or acknowledged fiduciary relation, but merely because the law declares that he is an involuntary trustee of property obtained by fraud.

ID.—PURCHASE OF BANK STOCK—FRAUD—FOLLOWING OF MONEY INTO HANDS OF RECEIVER.—Where a bank fraudulently induces a person to purchase its stock and shortly thereafter becomes insolvent, the purchaser cannot claim that the identical money paid for the stock passed into the hands of the receiver, and that he is entitled to recover his money, on the theory that the bank at all times had on deposit a sum of money in excess, and it will be presumed that it was retained to meet the purchaser's claim.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Wm. M. Abbott, and Wm. M. Cannon, for Appellant.

De Laveaga & Magee, for Respondent.

SLOSS, J.—On October 30, 1907, California Safe Deposit and Trust Company, a banking corporation, closed its doors. The bank commissioners took possession of its assets, and an action was begun, pursuant to the provisions of the statute then in force (Stats. 1903, p. 365), to have the said bank declared insolvent, and to have a receiver appointed for the purpose of liquidating its affairs.    On January 14, 1908, adjudication of insolvency was made and a receiver appointed.

On April 10, 1908, O. M. Goldaracena, the appellant herein, filed his petition, asking that the receiver be declared to hold the sum of twelve thousand dollars in trust for him, and that he recover the same with interest.    A second amended peti-

tion was subsequently filed. The court sustained the receiver's demurrer to the latter pleading, and the petitioner appealed. The appeal resulted in a reversal of the judgment entered upon the sustaining of the demurrer. (*People* v. *California Safe Dep. & Trust Co.*, 19 Cal. App. 414, [126 Pac. 516, 520].) The case went back for trial, and judgment was entered granting the petitioner some, but not all, of the relief claimed by him. His appeal from the second judgment is now before us.

The allegations upon which the petitioner sought relief were, in effect, that on September 20, 1906, the California Safe Deposit and Trust Company had, by means of false and fraudulent representations, induced him to purchase one hundred shares of the capital stock of said company for the sum of twelve thousand dollars; that he had not learned the falsity of the representations until shortly before beginning this action, and that he had promptly served upon the bank and the receiver his notice of rescission. He further alleged that the said sum of twelve thousand dollars paid by him remained in the possession of the bank continuously until the adjudication of insolvency, and that it thereupon passed into the hands of the receiver, who has since held the same, "and that the same can be traced and identified in his hands, and is the identical money of the petitioner." It was held, on the former appeal, that the petition stated a cause of action, and this holding is, of course, binding here.

When the case came to be tried, the court found in favor of petitioner's allegations with respect to fraud, discovery, and rescission. It found, however, that no part of the sum of twelve thousand dollars paid by the petitioner as the purchase price of the stock was continuously in the possession of said bank from the time of the payment until the appointment of the receiver, that the receiver did not receive any part of said sum, and that no part of it can be traced or identified into his hands. Accordingly, the court concluded that petitioner was entitled to a rescission of his contract, and to an allowed claim against the bank for $11,350, being the amount paid by him for his stock, less dividends declared and paid by the bank prior to the adjudication of insolvency. The judgment was that said claim be paid in due course of administration and liquidation of the affairs of the bank by the receiver, and that the petitioner be paid the dividends theretofore paid by the receiver to other general creditors, amounting to thirteen and

one-third per cent, with interest, and that he is entitled to receive on his claim such further dividends as may be declared and ordered paid upon common claims.

Upon this appeal the appellant insists that he was entitled to payment in full, rather than as a general or common creditor. His position is that the bank became an involuntary trustee of the twelve thousand dollars which it had obtained from him by fraud (Civ. Code, sec. 2224), and that he had sufficiently traced this trust fund into the hands of the receiver to be entitled to payment in preference to general creditors. It is well settled that the beneficiary of a trust may follow and recover the trust fund if any property in the hands of the trustee or of those taking with notice can be identified either as the original property of the *cestui que trust,* or as the product of it. (*Thompson's Appeal,* 22 Pa. St. 16.) Where, however, the identity of the trust fund has been lost, the beneficiary is relegated to the position of a general creditor, and must share *pro rata* with other general creditors. (*Lathrop* v. *Bampton,* 31 Cal. 17, [89 Am. Dec. 141].) The court below found that the fund claimed by petitioner could not be identified or traced into the assets going into the hands of the receiver, and the judgment is therefore clearly right, unless the appellant can establish his contention that the findings in this regard are contrary to the evidence. The record shows these facts: On September 20, 1906, the day when the bank sold this stock to the petitioner, it had on hand in its vaults the sum of $177,664.13, and on the same day it had on deposit with other banks the sum of $1,326,436.98. At no time between said twentieth day of September, 1906, and the closing of the bank on October 30, 1907, did the amount of money held by the bank fall below $123,693.96. On the day when the bank closed its doors it had on hand $189,564.89 in cash, and $135,848.37 on deposit with other banks. The total deposits in the bank on September 20, 1906, were $8,507,505.07, and on October 30, 1907, $9,064,-510.64. Between these two dates the deposits and withdrawals from the bank aggregated many millions of dollars; the deposits during that period amounted to more than six million six hundred thousand dollars, and the withdrawals about the same. Claims aggregating $331,082.60 have been presented by persons who made deposits during the last four days of the active life of the bank. Such depositors demand

that the amount of their deposits be allowed as preferred claims.

The appellant insists that upon these facts the court was bound to find that the twelve thousand dollars received from him, as aforesaid, remained intact in the hands of the bank during the entire period intervening between the purchase of the stock and the closing of the bank, and that such fund had been identified and traced into the hands of the receiver. The argument is that since it appears that the bank had on hand at all times a sum in excess of twelve thousand dollars, the amount claimed by the petitioner, it must be presumed that it retained this sum to meet his claim arising from the fraud perpetrated upon him. The argument is based upon the well-settled rule that if a trustee mingles his own funds with the trust fund, and thereafter draws from time to time from the commingled mass, "it will be presumed that the moneys so drawn were from his own portion of the fund, rather than from the moneys held by him in trust." (*Elizalde* v. *Elizalde*, 137 Cal. 634, 641, [66 Pac. 369, 70 Pac. 861]; *In re Hallett's Estate*, L. R. 13 Ch. Div. 696; *National Bank* v. *Insurance Co.*, 104 U. S. 54, [26 L. Ed. 693]; Lewin on Trusts, *895.) Various expressions have been used in defining the nature of the rule. In some of the cases, as pointed out by the appellant, it has been said that equity will "attribute" the withdrawals to the trustee's private account. In others, as in the Elizalde case above cited, it is said that the trusteee will be "presumed" to have drawn his own money. In one case (*Crawford County Commrs.* v. *Strawn*, 157 Fed. 49, [15 L. R. A. (N. S.) 1100, 84 C. C. A. 553]), the doctrine is explained as resting upon a "fiction." But whatever name be given to it, the rule originates in and rests upon the underlying presumption "that a person is innocent of crime or wrong." (Code Civ. Proc., sec. 1963, subd. 1.)

Has the doctrine any proper application to a case, like this, where a party has fraudulently induced another to enter into a contract, and holds what he has received thereunder in trust, not by virtue of any contractual or acknowledged fiduciary relation, but merely because the law declares that he is an involuntary trustee of property obtained by fraud? Is it to be presumed that one who has obtained property fraudulently under an agreement whereby it becomes his own (sub-

ject merely to the other party's right of rescission) will, notwithstanding his acquisition and holding under a claim of ownership, keep the property intact for the benefit of the one from whom he has obtained it? Can the wrongful act of the party obtaining the money furnish the basis for making him a trustee, and at the same time the ground for presuming that he acts rightfully? These questions have been directly presented to the supreme court of Iowa, which has answered them by saying that the rule relied upon by the appellant does not apply to involuntary trusts arising solely from fraud. In *In re First State Bank of Corwith,* 149 Iowa, 662, [129 N. W. 70], that court said: ''While we have held that where a bank receives money wrongfully, a trust arises as between it and the true owner of the money, we have never held that the wrongful act of the bank will alone create a preference as against general creditors. Are the appellees herein entitled to the aid of the legal presumption that their money reached the hands of the receiver in the form of increased assets of the bank, and that it may be taken therefrom without impairing the rights of the general creditors? We are of the opinion that an affirmative answer to the inquiry would require us to go a step further than we have ever gone, and to establish a rule that would be unjust and inequitable. . . . In all of our cases, except one which will be noticed later, where the presumption has been given force, the deposits were of trust funds, the character of such funds was known to the banks when the deposits were made, and the deposits involved no wrongful act on the part of the banks. The presumption was in every instance based on the theory that the bank, knowing the character of the fund and acting honestly, would not use or dissipate it as long as it had funds of its own.'' The court then goes on to explain *Whitcomb* v. *Carpenter,* 134 Iowa, 227, [10 L. R. A. (N. S.) 928, 111 N. W. 825], the exceptional case to which it had referred, by saying that the bank had there become a trustee by contract. ''But in any event,'' continues the opinion, ''we do not think that it can be presumed that a bank will keep money that it has obtained by means of willful and deliberate criminal acts. The ordinary thief disposes of stolen property as soon as possible, and it would be going a long way to say that a bank that has obtained money by means of its deliberate forgery will be presumed to have kept it on

hand to be returned to the injured party intact. We are not willing to so hold, and without such presumption the appellees have made no showing that entitles them to preference.''

The appellant is not correct in his statement that the case just cited has been overruled. On the contrary, it has been approved in a later decision by the same court. (*In re First State Bank,* 152 Iowa, 724, [133 N. W. 354].) Nor are we cited to any authorities holding the contrary. *In re Hallett's Estate,* L. R. 13 Ch. Div. 696, a leading case, is relied on by the appellant. It does not, however, hold that the presumption applies to cases like the one before us. It merely holds that it is applicable not merely to the technical relation of trustee and *cestui,* but to all relations of a fiduciary character, as, for example, that of principal and agent. In all of the other cases cited, the money in question was either received in trust or was taken from a trustee with notice of the character in which he held it.

There is, of course, no pretense that petitioner has traced, or can trace, his twelve thousand dollars into the possession of the receiver, except by means of the artificial presumption or fiction upon which he relies. The controversy, in its essence, is between the petitioner and other claimants whose only recourse is to a fund insufficient to meet the demands upon it. All concerned must suffer some loss through the mismanagement or misconduct of the officers of the bank. In equity there is no reason why the petitioner should be preferred to all other creditors or claimants. For over a year the petitioner occupied the position of a stockholder, and received dividends on his stock. According to his claim, the bank was insolvent when he purchased his shares. Nevertheless, it went on doing business, and accepted deposits of many millions from others. The greater part of the nine million dollars on deposit when the bank closed its doors had been received after the petitioner purchased his stock. It is not to be supposed that anyone would deposit money in a bank which he knew to be insolvent, and we may fairly assume, therefore, that everyone who deposited money after the petitioner's purchase of stock did so under the belief, mistakenly held, if not fraudulently induced, that the bank was in a sound condition. These depositors, to say nothing of those who claim to be entitled to preferential payment (their

claims exceeding all of the funds on hand), are as much entitled as is the petitioner to the favorable consideration of a court of equity. We do not think that any rigid legal presumption should be applied for the purpose of giving to one claimant a preferential right over others whose position does not in justice differ from his.

It becomes unnecessary to consider other points made by the respondent.

The judgment is affirmed.

Shaw, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.