## DOUGHERTY et al. v. GENERAL PETRO-LEUM CORPORATION OF CALIFORNIA.

### No. 20421—R.

District Court, N. D. California, S. D.
Aug. 30, 1939.

Sullivan, Roche & Johnson, of San Francisco, Cal., for plaintiffs.

A. L. Weil and M. Weil, both of Los Angeles, Cal., and Harris F. Shaw, of San Francisco, Cal., for defendant.

ROCHE, District Judge.

This action was commenced in the Superior Court of California. It was removed to this court on grounds of diversity of citizenship. Plaintiff,[1] F. C. Dougherty, seeks to obtain certain oil royalties impounded by defendant, General Petroleum Corporation of California. Two judgments rendered by the Supreme Court of California (Dougherty v. California Kettleman Oil Royalties, Inc., 1937, 9 Cal. 2d 58, 69 P.2d 155, and 1939, 88 P.2d 690), established plaintiff's right to the royalties. Defendant, involved in the state litigation by a bill in interpleader, sets up estoppel as a defense to plaintiff's judgment rights.

A comprehensive statement of the facts in this case may be found recited in the above decisions of the California Supreme Court. A restatement of some of the pertinent facts, in chronological order, is necessary for a proper understanding of the problem of estoppel.

In 1920, plaintiff Dougherty entered into a contract with one Ochsner, a petrole-

---

[1] Dougherty is treated as the sole plaintiff throughout this opinion because the rights of all plaintiffs spring from him. But what is said with reference to his rights and liabilities will be understood to apply to the other plaintiffs as well.

um engineer. Dougherty agreed to obtain oil lands for Ochsner from the United States Department of the Interior. In return, Ochsner promised to pay Dougherty a royalty of 10% on revenue realized from the operation of the lands covered by the permit to be held by Ochsner. This agreement was later modified by a reduction of Dougherty's interest to 5%. Dougherty obtained the permit from the federal government, as required by his contract; but Ochsner sought to avoid his side of the agreement with Dougherty. On August 7, 1923, Ochsner assigned his permit to the Coast Land Company, which took the oil lands subject to Ochsner's reserved royalties of 7½% in what was known as the Discovery, or A lands, and 2½% in the remainder, or B lands. Ochsner did not inform the Coast Land Company of Dougherty's interest in the lands, nor did he make any provision for the protection of Dougherty's royalty rights. Ten days after the Coast Land Company transaction was completed, Ochsner and two friends formed the Universal Oil Land Company, to which was assigned Ochsner's reserved royalties. On October 8, 1923, the Coast Land Company assigned its permit to the General Petroleum Corporation, which recognized Ochsner's reserved royalties, as held by the Universal Oil Land Company. Shortly after this transfer to the General Petroleum Corporation, Dougherty notified the Company of his interest in the permit, and in March of 1924, wrote that he had a 5% royalty interest in all oil or gas produced.

As soon as Dougherty had learned of the assignments of the permit and the reservation of a royalty interest in Ochsner, he tried to protect his contract rights. But Dougherty failed to obtain a satisfactory settlement of his claims on the oil lands from Ochsner and his associates. Therefore, on November 21, 1924, he filed suit in the Superior Court in San Francisco. In his pleadings, Dougherty alleged a 50% interest in the permit which he had obtained for Ochsner. During the course of this suit, which went through several trials and appeals before the plaintiff finally prevailed, substitutions took place among the persons and corporations named as defendants. On June 11, 1926, General Petroleum Corporation assigned its interest in the permit to General Petroleum Corporation of California, while on January 15, 1929, the Universal Oil Land Company transferred its reserved royalty rights to a corporation formed to succeed it, namely, the California Kettleman Oil Royalties, Inc. General Petroleum Corporation of California, defendant in the suit at bar, became active in the Ochsner litigation on June 30, 1930, when it filed an answer and cross-complaint in interpleader in the suit which was then entitled Dougherty v. California Kettleman Oil Royalties, Inc. On July 9th of the same year, defendant filed a complaint in interpleader. The reserved royalties, for which Dougherty was suing, were set up in the complaint, and all interest in them was disclaimed by General Petroleum Corporation of California, which stated that it would hold the royalties in trust until the court reached a decision and meanwhile it would continue to impound the necessary funds.

A summary of the facts up to 1931 shows that plaintiff Dougherty, relying upon a contract entered into in 1920 with one Ochsner, is suing California Kettleman Oil Royalties, Inc., hereafter called Calket, for royalties reserved on oil lands obtained under the contract. Calket, by a series of assignments, stands in the same legal position as Ochsner, who reserved certain royalties to himself in 1923 when he assigned his oil land permit. General Petroleum Corporation of California, defendant in the case at bar (and hereafter called G. P.), is the final assignee of the permit, which it holds subject to the reserved royalties. G. P. is involved in the suit of Dougherty v. Calket by reason of its bill in interpleader, filed in 1930.

On March 10, 1931, Dougherty answered Calket's cross-complaint by setting up his 10% contract with Ochsner, as voluntarily reduced to 5%. Again on June 22, 1931, in an amended answer and cross-complaint in the interpleader suit of G. P., Dougherty pleaded the 10% contract, as reduced to 5%. On the thirteenth of the following month the first complete trial of the case was concluded with an opinion which ruled in favor of Calket. (It should be noted that the opinion of Superior Court Judge Johnson[2] stated that Dougherty was claiming *all* of the royalties awarded to Calket. Dougherty's contract interest of an overriding royalty of 5% exceeded the total amount of Ochsner's reserved royalty interest, upon which Calket based its claim.)

---

[2] No opinion for publication.

On July 15, 1931, two days after Judge Johnson's opinion in favor of Calket, defendant made a written agreement whereby Calket might borrow $1,000,000 or whatever portion of that sum its reserved royalty interest might bear to the total royalty claimed. As security for the loan, Calket pledged all of its right, title and interest in the disputed royalties. When findings were being proposed after the opinion had been filed in Dougherty's unsuccessful suit, his attorney asked for a 1% royalty interest, in accordance with what he believed the judge's theory of the case to be. On August 29, 1931, a certified check for $500,000 was made out by defendant to Calket, in accordance with the terms of the loan agreement. Two additional payments of $150,000 each were made in December.

A retrial of the case of Dougherty v. Calket was granted by Judge Johnson, and in 1933, during the course of this trial, Dougherty filed a third amended and supplemental complaint, setting up the 10% contract as reduced to 5%. By means of this amendment, the pleadings were made to conform to the proof. In 1935 Dougherty was declared to be the owner of all the reserved royalties by the trial judge, who was affirmed by the state Supreme Court on May 27, 1937. Dougherty v. California Kettleman Oil Royalties, 9 Cal.2d 58, 69 P.2d 155. G. P., after this final judgment against the party to whom a loan of $800,000 had been made, foreclosed on what had been Calket's "right, title and interest" and took title in itself in 1938.

When Dougherty was declared by the California Supreme Court to be the owner of all the reserved royalties in the controverted oil lands, he expected defendant to recognize his rights and turn over the funds which had been impounded during the course of the litigation. But defendant refused to pay Dougherty the accumulated funds or to recognize his interest free from the lien which G. P. held against Calket. Therefore Dougherty commenced the present suit to recover from defendant. G. P. invoked the defense of estoppel, arising out of misleading pleadings and conduct of plaintiff in his suit against Ochsner, Calket and others. It is defendant's contention that it would not have made a loan to Calket unless there was assurance that the borrower had ample security to protect the loan; that plaintiff's pleadings and other conduct gave rise to such assurance; that the loan was made, and that therefore it is the duty of plaintiff, the victor in the lawsuit, to utilize his royalties to safeguard defendant's loan.

What are the facts which might have misled defendant? As set out above, in 1924 Dougherty's complaint asked for a one-half interest in all the rights and benefits enjoyed by Ochsner out of his assignment of the oil lands covered by the permit. Thereafter plaintiff continued to ask for a one-half interest through 1930. At the end of the first complete trial, which was decided adversely to Dougherty, his attorney asked the court to make findings entitling plaintiff to a 1% royalty, in accordance with what Dougherty's attorney believed the judge's theory of the case to be. This request was made on August 5, 1931. In September of the same year, plaintiff's then attorney had a phone conversation with defendant's attorney over the matter of the 1% royalty. The conversation, as recalled at the present trial was not distinctly remembered by its participants; but defendant had already made out a certified check of $500,000 to Calket before this conversation took place.

In reply to defendant's assertion of estoppel, plaintiff has shown that as early as February of 1925 his then defendants took a deposition in which Dougherty testified that he based his claim upon his 10% royalty contract, which was later voluntarily reduced to 5%. In October of that year, a partial trial was had before Judge Cabaniss in the San Francisco Superior Court, and Dougherty again testified that he relied upon his 10% contract as modified. The contract was itself introduced into evidence. Then in March of 1931—before defendant entered into its loan agreement with Calket—Dougherty answered Calket's cross-complaint by setting up the Ochsner contract, with its reservation of a 10% royalty, later reduced to 5%. A copy of the contract was attached to the answer to the cross-complaint. In the month of March, during the trial before Judge Johnson of the Superior Court, Dougherty once more relied on the contract to support his case, as he did in June, 1931, when he filed an amended answer to the now defendant's interpleader suit. It should be noted that it was not until July 15, 1931, that defendant entered into its written loan agreement with Calket.

At the retrial of the case in 1933, plaintiff's amended pleadings alleged the 10% contract, reduced to 5%. While these last pleadings, filed in May, 1933, are of little moment in determining the problem of estoppel, they are important in showing that plaintiff did not alter his cause of action and that Dougherty was relying on his contract as early as 1924. Defendant was clearly aware of the contract at the time it was assertedly induced to enter into its loan agreement with Calket. This is the state of the record upon which we are asked to decide whether or not plaintiff's conduct is such as to estop him from now seeking recovery of the impounded funds, plus an unencumbered claim to all future overriding royalties as reserved by the first Ochsner agreement with defendant's assignors.

■ Several reasons are advanced by plaintiff to defeat the defense of estoppel. He urges that since defendant is a pendente lite encumbrancer, it is bound by the judgment in Dougherty v. Calket which declared that Dougherty was the owner of all the royalties. Plaintiff also urges that defendant was not induced to make the loan to Calket by reason of plaintiff's pleadings, because those pleadings were not in the least deceptive at the time of the actual making and carrying out of the loan agreement. Other reasons are relied upon by plaintiff, but the two which we have already set up are sufficient to demonstrate the untenability of defendant's position. Section 1908 of the California Code of Civil Procedure states that a judgment is conclusive between the parties and their successors in interest, provided they have notice of the pendency of the action or proceeding. In the case at bar, there is no question but that defendant was a pendente lite encumbrancer. Many cases, such as Whitney v. Riggins, 1858, 10 Cal. 547, 70 Am.Dec. 748, Welton v. Cook, 1882, 61 Cal. 481, Dobbins v. Economic Gas Company, 1920, 182 Cal. 616, 189 P. 1073, 1078, sustain plaintiff's contention that defendant is bound by the judgment of the Supreme Court of California. Nor may defendant avail itself of a plea of estoppel on the theory that the judgment was rendered on amended pleadings. The authorities hold that amendments to the pleadings continue to be binding upon a pendente lite purchaser or encumbrancer where such amendments do not change the cause of action. In the case of Dobbins v. Economic Gas Company, above, the facts of which do not differ materially from those now before the court, the following language was used: "But certainly a purchaser pendente lite is bound by the result of the suit, although that result may be based upon issues raised subsequent to his purchase, provided the matter adjudicated be the cause of action subject to which he bought and the issues be material and proper to that cause of action."

The state Supreme Court has expressly held that plaintiff did not change his cause of action by asking for all the reserved royalties, based upon his contract with Ochsner. Thus defendant, a pendente lite encumbrancer, involved in the state litigation by its bill in interpleader, is bound by the judgment in favor of Dougherty.

■ Plaintiff's suit is made conclusive by the fact that the series of events which lead up to the making of the loan by defendant Calket do not give rise to an estoppel. A review of the facts, as set out above, shows that despite plaintiff's early pleadings, defendant was aware of the Ochsner contract at all times and knew that Dougherty based his claims upon the contract. Plaintiff notified defendant's predecessor as early as 1924 about his right to an overriding royalty of 5%. Dougherty's own testimony at the first complete trial showed that he believed himself entitled to all of the reserved royalties. But most important of all, in defendant's own interpleader suit in 1931, before the loan was made, Dougherty answered that he "seeks to recover the judgment and decree of said Court declaring him to be the owner of and entitled to a 5% overriding royalty of all the oil and/or gas produced or to be produced from the lands" covered by the permit, and that Calket held such royalties "in trust for the benefit of this defendant, F. C. Dougherty to the extent necessary to protect his said interest and property, to-wit the 5% overriding royalty referred to."

Other allegations in Dougherty's answer gave additional notice to G. P. that a loan to Calket was not warranted under the circumstances of the suit then pending. Dougherty made no representations to induce G. P. to make a loan to Calket. Certainly such a loan could be of no benefit to Dougherty, whose conduct throughout the litigation has been free from deception and could have misled no one. See Gioscio v. Lautenschlager, 1937,.

23 Cal.App.2d 616, 73 P.2d 1230. The facts of this case do not warrant the court in finding an equitable estoppel.

One other issue has been raised by G. P. which will be briefly touched upon. On January 1, 1931, defendant joined the Kettleman North Dome Association, called "Kenda", turned over its permit to the Association, and thereby obtained a share in all the lands held by Kenda. This Association operated its holdings under a plan known as the unit rule, whereby some of its land was allowed to remain inactive. Defendant contends that since it did not operate the lands covered by plaintiff's contract, plaintiff is not entitled to royalties, except to the extent to which those lands themselves have produced, and continue to produce, oil for Kenda, the Association of which defendant is a member and from which it receives its earnings in proportion to its land contribution to the Association. In other words, if the disputed lands are not utilized at all— which was the case for six years under Kenda's unit plan of operation—then plaintiff is entitled to nothing. Such an assertion, supposedly based on the terms of plaintiff's contract, does not merit serious consideration. Plaintiff is entitled to a return on oil or gas produced. There is an implied promise to work the lands. If the ground covered by the permit is turned over to an association (with the consent of Dougherty in 1936 in the principal case), and a return is realized on the proportion of this land to the total held by the association, then the royalties must be determined in relation to the return which the land yields to the association member, and not on the basis of the actual workings of the land in question. G. P. is in effect holding in trust for Dougherty and has merely made an exchange of trust property. After such an exchange, defendant continues to act on behalf of Dougherty to the extent of his royalty. Merritt Oil Corporation v. Young, 10 Cir., 1930, 43 F.2d 27, People v. California Safe Deposit & Trust Company, 1917, 175 Cal. 756, 167 P. 388, L.R.A.1918A, 1151. Thus Dougherty is entitled to apply his 5% royalty interest to the amount which G. P. receives from Kenda.

Upon a consideration of the entire case, the court holds that plaintiff is entitled to judgment, together with costs. Findings will be prepared by the prevailing party.