[Civ. No. 18822. Second Dist., Div. Three. Oct. 8, 1952.]

EVELYN WEIGHTMAN, Respondent, v. GEORGE H. HADLEY, SR., Appellant.

Walter M. Gleason and Prentiss Moore for Appellant.

Dolley, Knight, Woods & Hightower and Eugene M. Elson for Respondent.

SHINN, P. J.—This action was for rescission of a sale of an interest in an oil lease and corporate stock to George H. Hadley; for a money judgment against Hadley, and to establish interests in oil leases under an alleged joint venture.

The judgment from which defendant Hadley appeals awards plaintiff: (1) $4,995.92 as one-half of a bonus received by Hadley for an oil and gas sublease under the "Richardson" lease in which plaintiff had a one-half interest; Hadley does not question this award; (2) $58,106.41 as bonus, and royalties already received and those to be received by Hadley under a sublease to Richfield of a one-third interest in the "Stone" lease, which interest, it was claimed, was procured from plaintiff through Hadley's fraud, and subsequently sublet to Richfield; (3) $20,400 as the proceeds of a sale by Hadley of and a dividend on certain stock in Norris Oil Company which it was claimed was procured from plaintiff through fraud on the part of Hadley and held by him under a constructive trust; (4) a one-third interest in an oil and gas sublease from Norris Oil Company to Hadley of a 40-acre parcel, which interest it was claimed came to plaintiff as her share under an alleged joint venture agreement; and (5) a 7½ per cent interest in a nonexistent lease of 8,000 acres of the "Russell Ranch" in the Cuyama Valley.

Plaintiff alleged in her complaint that on or about the 22d day of March, 1944, she entered into a joint venture with George H. Hadley for the acquisition of leases and other oil and gas interests in the Cuyama Valley, which is located in part in San Luis Obispo County, and in part in Santa Barbara County, and that subsequently it was orally agreed by said parties that plaintiff would have a one-third interest in said joint venture with the exception of certain leases thereafter mentioned in the complaint; plaintiff at that time gave Hadley $250; on April 17, 1944, Hadley acquired a one-half interest in an oil and gas lease known as the Richardson lease, and on that date assigned to plaintiff one-half of his one-half interest in said lease; on February 20, 1945, Hadley, having an agreement with one Stone and his wife for a lease, transferred to plaintiff a one-third interest therein for considerations theretofore received from plaintiff; the Stone lease called for by the agreement was executed to Hadley March 3, 1947; on November 15, 1945, plaintiff gave Hadley an additional $300; on or about October 20, 1945, pursuant to and in furtherance of said joint venture, Hadley secured an oil and gas lease on the Russell Ranch in Cuyama Valley; on April 30, 1946, in consideration for moneys theretofore received, and her interest in the Russell lease, Hadley agreed to have issued to plaintiff 3,000 shares of stock in the Norris Oil Company, a corporation organized by Hadley and others October 30, 1944; on January 23, 1947, plaintiff gave Hadley an additional $300 and he agreed to give her an additional 1,500 shares of stock in Norris Oil Company; shortly thereafter he gave plaintiff a certificate for 4,500 shares of said stock as and *for her interest in the Russell lease.*

There were two other transactions which were not pleaded by plaintiff or defendant but on account of which the court found and decreed plaintiff was entitled to an interest in certain leases. The first of these was the basis of award number 5 above mentioned. It related to the Russell 8,000-acre lease. As previously stated, plaintiff had alleged that she was given 3,000 shares of stock in Norris Oil Company for her interest in this lease. During the trial she produced, under circumstances hereinafter related, a writing assigning to her a 7½ per cent interest out of Hadley's 37½ per cent of the proceeds and profits that might be derived by Hadley from a contract with one Frank for development of the Russell property. This writing was dated April 17, 1944.

An intelligible statement concerning this agreement necessitates some preliminary explanation: Sometime in 1940 Hadley obtained from one Russell, and in the name of Eugene H. Agee as lessee, a lease on the Cuyama Rancho of some 8,200 acres. This was superseded by another lease dated March 1, 1943, from Russell to Agee. On that day it was assigned to W. R. Ramsey and W. E. Ramsey. On June 28, 1943, W. R. Ramsey and wife, and W. E. Ramsey and wife, reassigned and quitclaimed the lease to Eugene H. Agee and Annie B. Agee. (W. E. Ramsey, now deceased, was the former husband of plaintiff.) On January 4, 1944, Agee assigned the lease to one P. H. Frank in consideration of Frank's agreement to drill a well upon terms and conditions under which Agee would receive shares of the production resulting from the development. On March 22, 1944, Agee assigned to Hadley a 37½ per cent interest in this contract. Hadley's assignment to plaintiff, after reciting the existence of the lease on approximately 8,000 acres, the assignment to Frank, and the contract with him, and specifying that Norris owned 25 per cent interest in the contract, Hadley 37½ per cent, and Agee 37½ per cent, provided as follows: "That G. H. Hadley for good and valuable consideration from Evelyn Ramsey and the late W. E. Ramsey I hereby this day assign seven and one-half per cent of my thirty seven and one-half per cent all the benefits derived therefrom to Evelyn Ramsey. (Signed G. H. Hadley.)" This lease was subsequently quitclaimed by Frank to Agee, was assigned to Norris Oil Company, was later surrendered by Norris and on October 20, 1945, Russell gave a lease to Norris Oil Company on a portion of the same property containing about 4,000 acres. It will thus be seen that the lease which plaintiff alleged Hadley procured from Russell October 20, 1945, was actually given to Norris Oil Company, and that at the time of the alleged joint venture agreement Hadley had an interest under the contract with Frank based upon the 1943 lease from Russell.

The second transaction was the basis of the number 4 award first mentioned. On or about April 10, 1948, Norris Oil Company executed to Hadley a sublease of 40 acres of the Russell Ranch, reserving a 14 per cent royalty to the sublessor. (Although this lease was not issued until that date, there was evidence that prior to December 16, 1947, Norris Oil Company had promised Hadley such a sublease.)

Thus, on December 16, 1947, plaintiff owned a one-quarter interest in the Richardson lease. She did not sell this in-

terest. She owned a one-third interest in the Stone lease and 4,500 shares of Norris stock. Hadley at that time owned a one-quarter interest in the Richardson lease, a one-third interest in the Stone lease (having previously sold a one-third interest to one Lubkin), about 37,000 shares of stock in Norris Oil Company and had been promised by Norris a sublease on 40 acres by Norris Company.

On December 16, 1947, Hadley purchased from plaintiff her one-third interest in the Stone lease and her 4,500 shares of Norris stock for $3,000 of which $1,800 was the price of the stock at 40 cents per share, and plaintiff executed an instrument reading: "Dec. 16-47 For good and valuable consideration I hereby assign and transfer my forty five hundred shares of Norris Oil Co. stock and all my right title and interest in and to the Stone property and any other interest that I may have in the Norris lease;, to Mr. George H. Hadley. Accepted EVELYN WEIGHTMAN. For the above agree to pay Mrs. Evelyn Weightman $3000. on demand. G. H. HADLEY." Plaintiff delivered the 4,500 shares of stock to Hadley. Upon the following day Hadley mailed plaintiff a check for $2,700, retaining, with plaintiff's consent, $300 to be used in acquiring oil acreage near Santa Maria. Plaintiff alleged that this sale of her stock and other interests was induced by certain fraudulent representations of Hadley. She sought rescission of this transaction and other relief which will be considered in detail as we proceed.

Before we go further it is necessary to relate certain additional facts as to occurrences subsequent to Hadley's purchase of plaintiff's interests. On December 16, 1947, two men, Henderson and Carpenter, were and for some time had been purchasing stock in Norris Oil Company from various owners. Hadley was assisting them in making these purchases, and had told them of several people, including plaintiff, who owned stock. On November 8, 1947, he sold Henderson and Carpenter 15,000 shares of Norris stock for which he was paid at that time $3,750. On December 17, 1947, he sold them the additional 4,500 shares of stock which he had received from plaintiff and was paid on that date $5,250. In the same transaction he also sold and transferred to Henderson and Carpenter a one-third interest in the Stone lease. Of the purchase price $2,250 represented an additional amount paid for Hadley's 15,000 shares of stock at 40 cents a share, $3,750 of which had previously been paid, $1,800 was the purchase price of the 4,500 shares of stock Hadley had received from

plaintiff and in the sale $1,200 of the $5,250 was allocated as consideration for the one-third interest in the Stone lease which was the price Hadley had paid plaintiff. The sale of this interest was evidenced by a written assignment thereof by Hadley to Carpenter and Henderson dated December 18, 1947, which specified that it was one-third of the whole from Hadley's undivided two-thirds interest in said lease. The assignment was recorded at the request of Carpenter December 22, 1947.

We can proceed more understandably by taking up separately the several provisions of the judgment, the findings upon which they rest and the evidence pertaining thereto. We shall take up later the questions of fraud, rescission and laches. We shall assume, merely for present purposes, that plaintiff established a case of fraud, that it was not necessary for her to rescind prior to filing the complaint (she gave no notice of rescission and made no offer to restore), and that she was not guilty of laches. It is also immaterial to the matters presently to be discussed whether the parties were in a joint venture. We shall consider first:

### THE RICHARDSON LEASE

Hadley sublet this property to Richfield for a net bonus of $9,991.84. It was not drilled on and there were no royalties. Plaintiff was awarded $4,995.92 as one-half of the bonus. Defendant does not question this provision of the judgment.

### THE STONE LEASE

On or about June 17, 1948, Hadley executed a sublease to Richfield of his one-third interest in the Stone lease, reserving a 1/48th royalty. He received $25,468.33 in bonuses for the sublease. To the time of trial royalties of $32,638.08 had been paid into court by Richfield. Plaintiff had judgment for these amounts and all further royalties to be paid by Richfield.

The theory of this award was that Hadley procured plaintiff's interest in the lease through fraud, that he held her interest as a constructive trustee and was accountable for everything he had received from it. This theory finds a basis in a finding the court made as follows: ". . . prior to December 16, 1947, said Hadley had actually sold a one-third interest in the Stone Lease to one Carpenter and one Henderson, and a one-third interest in the Stone Lease to one Lubking, et al.; that on December 16, 1947, said Hadley had no further interest in the Stone lease left to sell." There was no evidence that

Hadley had sold a one-third interest to Carpenter or Henderson before he acquired plaintiff's one-third interest. All the evidence was to the contrary. Although it was understood between Hadley and Carpenter and Henderson that the latter two were desirous of purchasing a one-third interest it was also understood that this would be the interest of plaintiff if it should be acquired by Hadley. There was no evidence whatever that Hadley intended or agreed to sell a one-third interest unless he acquired plaintiff's interest. There was no other agreement either written or oral nor was there any payment of money. Plaintiff's complaint and her testimony emphasized the fact that Hadley represented, and she understood, that he was purchasing her interests for resale to other parties who were ready to purchase the same. It was on December 17th, after Hadley acquired plaintiff's interest, that he negotiated a sale thereof to Carpenter and Henderson and agreed on a price, which was paid by them. The assignment of this interest which was executed two days after Hadley's purchase from plaintiff, after identifying the lease read, in part, as follows:

"WHEREAS, the said lease and two-thirds of all rights thereunder or incident thereto are now held by G. H. HADLEY of record.

"Now THEREFORE, for and in consideration of Ten ($10.00) Dollars, and other good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned, present owner of the above mentioned interest does hereby bargain, sell, transfer, assign and convey to SCOTT CARPENTER, and MAURICE HENDERSON, ONE-THIRD ($\frac{1}{3}$) interest, of said G. H. HADLEY, or $33\frac{1}{3}$ interest, of all of said 100 interest, of said G. H. HADLEY, *undivided Two-Third interest* in the above mentioned lease." (Emphasis added.) It is beyond question that Hadley leased his own one-third interest to Richfield and that plaintiff has no claim upon either the bonus or the royalties.

Upon a rescission plaintiff would have been entitled to the return of the interest in the lease or what Hadley had received for it, if he had sold it. She received the exact amount for which it was sold. There was no evidence whatever that it was worth more. Plaintiff claimed Hadley had not sold it but the proof was to the contrary. Of course it was not claimed that he sold it at a profit or in bad faith. Neither was it claimed that he sold his one-third interest previously owned after he purchased plaintiff's interest.

If it be assumed that defendant acquired plaintiff's property by fraud and thus became an involuntary trustee with respect to it (Civ. Code, § 2224), section 2237 would apply. It reads: "A trustee who uses or disposes of the trust property, contrary to section 2229, may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he has disposed thereof, to replace it, with its fruits, or account for its proceeds with interest." Plaintiff did not allege that defendant had sold the interest in the Stone lease; she contended at all times and tried her case upon the theory that he did not sell it but that he made use of it. If she had succeeded in proving that he retained it as a constructive trustee, and profited by the sublease, she would have been entitled to have him account for the profits he had made. Such was the theory of the judgment but, as we have seen, the facts were to the contrary. Plaintiff has never contended that after Hadley acquired her interest in the lease he sold the interest he had previously owned, and even if she had attempted to change her theory she would have been unable to produce any evidence that Hadley sold his own third interest and retained hers. In addition to the positive evidence the presumption would be that he sold her interest and not his own. (*People* v. *California Safe Deposit & Trust Co.*, 175 Cal. 756 [167 P. 388, L.R.A. 1915A 1151].) However, her case must stand or fall as she made it. There was complete failure of proof of her claims to the bonus and royalties which came to Hadley through the sublease of his own interest in the lease. As we have previously stated, plaintiff sold her property for the express purpose of having it resold by Hadley and although she made a transfer of it she waited for her money until he had sold it. She received exactly what Hadley received for the property and if he incurred a liability to her through having sold the property it was fully satisfied. The award of the bonus and the royalties was in error.

PLAINTIFF'S STOCK IN NORRIS OIL COMPANY

Plaintiff was given judgment for $18,000, as the amount Hadley received for 6,000 shares of Norris stock July 9, 1948, when he sold 30,000 shares at $3.00 per share, and also judgment for $2,400, being the amount of a cash dividend on 6,000 shares declared after December 16, 1947. The findings contain the following: "Said Hadley holds as a constructive trustee . . . the sum of $18000.00 representing the proceeds

from the sale of 6,000 shares of stock of Norris Oil Company, which the Court finds were sold by defendant Hadley on or about July 9, 1948.'' The finding that he sold stock at $3.00 per share is correct, but the shares he acquired from plaintiff were not included in that sale.

The conclusion that Hadley held 6,000 shares in trust for plaintiff is not based upon any finding. The court found that Hadley agreed to give plaintiff 3,000 shares; after that agreement was made and before the certificate for 4,500 shares of stock was delivered to her a stock dividend of 50 per cent was declared by Norris; thereafter, when plaintiff requested something to show for the promised stock Hadley said he would give her an additional 1,500 shares or a certificate for 4,500 shares instead of 3,000 shares, and a few days later delivered her such a certificate. The court did not find that Hadley ever agreed to give plaintiff more than 4,500 shares. Defendant claims that the additional 1,500 shares represented only the stock dividend on 3,000 shares and that there was no evidence and no finding that he promised to give plaintiff more than this. The point is well taken. Moreover, even if the court had found that plaintiff had been promised 6,000 shares there would have been no evidence to support the finding. When defendant delivered a certificate for 4,500 shares plaintiff accepted it without question. When she sold the shares it was by writing which read: ''For good and valuable consideration I hereby assign and transfer my forty-five hundred shares of Norris Oil Company stock'' etc. In her original complaint and in her second amended complaint she alleged that defendant promised to give and did give her 4,500 shares of stock. She did not allege that he promised her 6,000 shares of stock, although in her second amended complaint she alleged that he holds as constructive trustee ''such of the 6,000 shares of stock of Norris Oil Company as may now be registered in the name of said defendant Hadley, or any nominee or nominees for said defendant Hadley, or the highest market value thereof during the period between December 16, 1947, and the date of disposal by said defendant Hadley of his stock, on or about July 9, 1948, which is $3.00 per share, plus interest thereon at the rate of 6% per annum from the date of disposal thereof, together with any and all additional shares of stock so registered to which plaintiff may be entitled by reason of stock dividends or increased issuance of shares thereon, or the proceeds derived therefrom by sale thereof, or otherwise.'' But, most significant of all, is the fact that

plaintiff did not testify that defendant ever promised her more than 4,500 shares, or that she ever asked for or expected more.

When Hadley sold the stock to Carpenter and Henderson he delivered them the identical certificate he had received from plaintiff. They paid him 40 cents per share and he paid plaintiff the same price. She waited for her money until Hadley had made the sale.

Plaintiff sued for the proceeds of the sale of the stock. She knew it had been sold December 17, 1947, but she also knew that it was sold for 40 cents per share and that Hadley had paid her the same price. In her complaint she ignored this sale for the obvious reason that Hadley had paid her the full proceeds, or all she could rightfully claim. Without any allegation as to whether Hadley had sold the stock, she alleged, as a mere conclusion, that he was a constructive trustee as to 6,000 shares, or the proceeds of a sale of some stock in July, 1948. Uncertain and incomplete as her complaint was, it was an election to seek the proceeds of a sale, even if she alleged a false date of the sale. Consistently with this election she proved Hadley had sold 6,000 shares for $3.00 per share. We do not see how plaintiff could, by evasion of the unquestioned facts, justly lay claim to more than she had already received. These was no fraud, mistake or deception in the sale to Carpenter and Henderson. Insofar as it bears upon the extent of Hadley's liability it was a separate transaction from plaintiff's sale to Hadley and constituted the consent of a beneficiary that her trustee might sell trust property at an agreed price. It was a top price for the stock at that time. We are aware of no principle of law or equity under which a beneficiary who has consented to a sale of trust property by one holding it as either a voluntary or involuntary trustee for an agreed price, and its full value at the time, would be allowed to recover a greater amount for which the trustee might sell like property of his own at a much later date. This was not an action at law for conversion of the stock. ■ When plaintiff sued in equity for the proceeds of a sale of the property she elected her remedy. The rules of damages for conversion were inapplicable. (*Clapp* v. *Vatcher*, 9 Cal.App. 462, 467 [99 P. 549].)

■ Damages and restitution are alternative remedies and an election to pursue one is a bar to invoking the other (*Alder* v. *Drudis*, 30 Cal.2d 372, 383 [182 P.2d 195]).

Plaintiff demanded restitution and that is what the judgment purports to award her, but it rests upon a false founda-

tion of fact. If it be assumed that defendant stood in a trustee relationship with reference to the stock the legal consequence would be that equity would not permit him to become unjustly enriched through the transaction with plaintiff. ■ It is to prevent unjust enrichment that constructive trusts are imposed as a remedy. (Rest., Restitution, § 160, p. 640; 54 Am.Jur., Trusts, § 219, p. 169.) And when plaintiff resorted to equity she could demand only equitable relief, or such relief as would be appropriate under a rescission of her sale to defendant.

''Ordinarily the benefit to the one and the loss to the other are co-extensive, and the result of the remedies given under the rules stated in the Restatement of this Subject is to compel the one to surrender the benefit which he has received and thereby to make restitution to the other for the loss which he has suffered.'' (Rest., Restitution, § 1, comment d.) ■ We think there could be no more appropriate case than the present one for holding that a trustee of a constructive trust who sells trust property with the knowledge and consent of the beneficiary, and for its full value, is accountable only for the sum received. ■ It is axiomatic that a beneficiary who consents to an act or omission on the part of a trustee may not hold the trustee liable for any resulting loss. (Rest., Trusts, § 216, p. 609.) ■ Where there is no deceit or misunderstanding with respect to the act or omission to which the beneficiary consents, the effect of the consent should be the same in the case of a constructive trust as in an express trust.

The trial court should have found that Hadley, if regarded as trustee of a constructive trust, was not accountable to plaintiff for more than he had received in the sale to Carpenter and Henderson. The award of $20,400, or any part of it, may not stand.

### The 40-acre Sublease from Norris

It was decreed that plaintiff was the owner of a one-third interest in this sublease. She was awarded $1,666.60 as one-third of the bonus received by Hadley for a sublease to Richfield. The property was not drilled and there were no royalties. There was no evidence of any agreement that plaintiff should have any specific interest in this lease or that the lease was ever discussed by the parties. The interest was awarded plaintiff upon the basis of findings that when plaintiff advanced Hadley the first amount, $250, the parties, by oral agreement, entered into a limited joint venture under which plaintiff would have an interest in oil and gas leases and interests to

be acquired by Hadley in the Cuyama Valley, that they later agreed that she would have a one-third interest in such leases and interests, with the exception of certain leases, namely, the Richardson and Stone leases, and, inferentially, excepting the stock interests in Norris Oil Company which Hadley acquired from time to time. There remained only the 40-acre sublease and the 7½ per cent interest in the Russell lease. As already stated, plaintiff did not plead that Hadley had procured the 40-acre sublease or made a sublease to Richfield. However, the issues that were tried were broad enough to encompass her claim to an interest in the 40-acre lease.

We find no evidence in the record to support the finding that the parties entered into a joint venture in which plaintiff would have a one-third interest. Plaintiff's former husband, W. E. Ramsey, and W. R. Ramsey, had been interested in highly speculative oil ventures in the Cuyama Valley. This valley, which lies across mountainous territory west of the old fields of Maricopa and adjacent fields, had long been regarded by oil authorities as barren of oil and gas. A few wildcat operators, including Hadley and the Ramseys, had obtained leases and conducted small and ineffectual exploratory operations. Hadley and associates had drilled two wells to the Santa Margarita sand in which they found oil sand in combination with salt water. The wells were failures, as were other wells which both prior and subsequent to the Hadley wells were drilled to the Santa Margarita sand. Hadley spent about seven years in his efforts to get oil in the valley, promoting small amounts of capital for that purpose, expending all the money he could get his hands upon and devoting much labor to his various efforts. Plaintiff was familiar with these conditions but was willing to advance small sums of money to assist Hadley in his efforts. Although it was understood that she would have some interest in leases that Hadley might secure there was no agreement that she should have a one-third interest or any other definite interest in all the leases. In the light of the uncontradicted evidence their oral agreement can only be construed as one under which they would agree from time to time as to the leases in which plaintiff would have an interest and as to the extent of her several interests. Further than advancing Hadley sums aggregating $850 plaintiff had nothing to do with the efforts to obtain leases. There was no agreement as to the total amount she

would advance. Hadley paid all of the costs, including substantial cash rentals which accrued from time to time. Plaintiff had no part therein. There was no understanding that she would assume, and she did not assume any rental or other obligations to the several lessors under any of the leases nor any share of the expenses or the debts which Hadley might and did incur. There was not the suggestion of an agreement that she would bear any share of the losses if losses were sustained. Her belated claim to a one-third interest in everything that was acquired is refuted by the several transactions which followed the initial arrangement under which she made advances. She was given a one-quarter interest in the Richardson lease, a one-third interest in the Stone lease and a 7½ per cent interest out of Hadley's 37½ per cent in the 8,000-acre Russell Ranch lease. Although this assignment came after the alleged joint venture agreement and plaintiff knew the extent of Hadley's interest she did not ask for one-third of it. At the time Hadley promised plaintiff 3,000 shares of Norris Company stock he was the owner of about 37,000 shares, 24,000 of which he had received as consideration for his interest in the Russell lease. Plaintiff was given 4,500 shares and did not ask for more. She has never claimed to be entitled to one-third of the stock Hadley received for his interest in the Russell lease. As previously stated, she alleged that the 3,000 shares were given her for her interest in that lease. She has never claimed that the stock which Hadley retained belonged to Hadley and herself as joint adventurers. At no time from the beginning to the end of these various transactions was it ever suggested by plaintiff or admitted by defendant that plaintiff's interest in the leases should be a one-third interest. Only in the case of the Stone lease was plaintiff given a one-third interest. *Plaintiff did not testify that Hadley ever promised her a one-third interest in leases or in other interests or rights he might acquire.*

It is immaterial what name is given the relationship between plaintiff and defendant. The question is what interest was plaintiff to have in leases and the proceeds of leases. There was no evidence of an agreement for a uniform interest in all leases. The interests were agreed upon in each separate transaction and in no two transactions were they in the same proportions. If it be granted that the original agreement contained the elements of a joint venture and that the parties might have acquired and retained leases which would have been the property of the joint venture, it is clear from the

evidence that in each instance they segregated their interests in each property as it was acquired. As these interests were segregated plaintiff and defendant each held the interest set apart to him or her free from any claim of the other thereto. We have already shown this to be true of the Richardson and Stone leases and the stock in the Norris Company. We will now show it to be true with respect to the 40-acre sublease which Hadley received from Norris. The finding that plain-·tiff had a one-third interest in that lease under a joint venture agreement is not supported by the evidence. There was no evidence that plaintiff had any interest in the lease. It was established by uncontradicted evidence that it was given to Hadley by Norris Company in consideration for stock contributed by Hadley to a pool of stock which was sold and the proceeds given to Norris. Hadley's contribution brought Norris $3,333 in the summer of 1947. Plaintiff admits that the lease was acquired in this manner. She had or claimed no interest in the stock held by Hadley, having already received her share. Whatever Hadley received in exchange for stock or as the proceeds of sales was his alone. Since there was no evidence that on December 16, 1947, plaintiff had any interest in the 40-acre lease, the award of a one-third interest in that lease and $1,666.66 as one-third of the bonus paid by Richfield was in error.

THE 7½ PER CENT INTEREST IN THE RUSSELL 8,000-ACRE LEASE

We have heretofore set out the substance of the agreement relating to this interest. Actually Hadley had a 37½ per cent interest in an agreement with one Frank, to whom Agee had assigned the Russell lease in consideration for his agreement to drill a well. He did not drill the well and reassigned the lease to Agee, who in turn assigned it to Norris Oil Company.

Plaintiff did not plead this agreement nor allege that she had or ever had had an interest in the Russell lease by virtue of the agreement. She alleged that Hadley acquired a lease from Russell October 20, 1945, as a part of the joint venture. The lease of that date was from Russell to Norris Oil Company. The lease that was in existence at the time of the alleged joint venture agreement had been acquired June 28, 1943, and had been assigned to Frank, January 4, 1944. She also alleged that the 3,000 shares of Norris stock were issued to her for her interest in the Russell lease. ▆ According to her complaint she no longer had an interest in that lease. That was the state of the pleadings upon which the parties

went to trial. Near the close of the trial the 7½ per cent agreement came to light under the following circumstances: Plaintiff had testified that certain writings identified by her were the only ones defendant had given to her. Thereafter the agreement in question was found among plaintiff's papers. Plaintiff was recalled to the stand and identified the writing. The purpose as stated by her counsel was to correct her testimony. Not only did plaintiff fail to plead that she had an interest in the lease but she pleaded that she had none; yet the court awarded her a 7½ per cent interest in the original 8,000-acre lease. Had she pleaded this agreement instead of alleging she no longer had any interest in the lease many defenses might have been urged. Her assignment related specifically to an interest in the avails of the Frank contract; the 8,000-acre lease had been assigned to Norris Oil Company and had been cancelled; it was no longer in existence; Norris Oil Company had sold stock upon the strength of its ownership of the lease; plaintiff, so far as shown, had never recorded her agreement or notified anyone she held it; the maps in evidence show that Richfield has developed an extensive oil field upon land embraced within the original 8,000-acre lease and the 4,000-acre lease from Russell to Norris Company dated October 20, 1945. No issue was raised or tried as to any claims plaintiff may have against Hadley, or Norris or others, arising out of the numerous transactions subsequent to April 17, 1944, the date of plaintiff's assignment.

It was error to decree that plaintiff has an interest in the original 8,000-acre lease by virtue of the April 17, 1944, assignment.

## The Issues of Fraud, Rescission and Laches

Defendant vigorously challenges the finding that he was guilty of misrepresentation; he says the essence of the alleged misrepresentation was that a well about to be brought in by Norris Oil Company on the Russell property was "wet" and that the cores showed salt water which had ruined two wells previously drilled on the same structure, and he insists that his representation was true—that the well came in 20 per cent salt water, soon went to 80 per cent water, and was a failure. It is true that the well was a failure in the Santa Margarita sand, the only one that was then known to exist. He urges as further defenses that plaintiff did not give notice of rescission and that although she knew January 1, 1948, that the well had been brought in and believed Hadley had

misrepresented the facts to her, she slept upon her rights until the following November, when she instituted this action.

The briefs discuss these questions at length. It would greatly enlarge this opinion and serve no purpose to decide them.

If fraud were established plaintiff would be entitled to no more than she had already received. She had been paid all that Hadley received for the 4,500 shares of stock and the third interest in the Stone lease. There was no evidence that she had any interest in the Norris lease. Whatever conclusions we might reach upon the issues of fraud, rescission and laches would not add to or detract from the results of our decision.

It is unnecessary to discuss other defenses urged by the defendant.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied October 29, 1952, and respondent's petition for a hearing by the Supreme Court was denied December 4, 1952. Carter, J., was of the opinion that the petition should be granted.