UNITED STATES of America, Plaintiff–Appellee,

and

Cities of La Quinta, Sanger & Loma Linda; Coachella Valley Joint Powers Insurance Authority; Federal Deposit Insurance Corporation, as Receiver for Jefferson Bank And Trust, Claimants–Appellees,

v.

REAL PROPERTY LOCATED AT 13328 AND 13324 STATE HIGHWAY 75 NORTH, BLAINE COUNTY, IDAHO, Defendant,

and

Palm Desert Redevelopment Agency, Claimant–Appellant.

No. 94–56491.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1996.

Decided July 17, 1996.

Christopher Norgaard, Brown, Winfield & Canzoneri, Los Angeles, California, for claimant-appellant.

Kathryn R. Norcross, Federal Deposit Insurance Corporation, Washington, D.C., for plaintiff-appellee.

Peter A. Urhausen, Gibbons, Lees & Conley, Walnut Creek, California; Steven M. Hanle, Stradling, Yocca, Carlson & Rauth, Newport Beach, California, for claimants-appellees.

Before: O'SCANNLAIN and TROTT, Circuit Judges, and VAN SICKLE,[1] District Judge.

VAN SICKLE, District Judge.

The Palm Desert Redevelopment Agency ("PDRA") appeals the District Court's decision to transfer the net proceeds from the sale of property located in Blaine County, Idaho to a fund administered by the Securities and Exchange Commission ("SEC") to reimburse the victims of the fraud of Steven D. Wymer. The PDRA believes that it should be the sole recipient of the $1,042,636.82 in net proceeds from the Idaho sale because the funds used by Wymer to purchase the property can be directly traced to the investment made by the PDRA. We deny the PDRA's claim and affirm the opinion of the district court.

I

On May 24, 1989, the PDRA retained Stephen D. Wymer, and his company, Denman & Co., as an investment advisor in treasury bills and other securities. On that same day, the PDRA transferred $5,170,000 by wire to a Denman account at the Security Pacific National Trust Company ("SPNT") in New York City. Before the PDRA's money was added, the SPNT account had a balance of $115,945.30 which was comprised of funds of other clients to whom Wymer gave investment advice. On June 5, 1989, Wymer wired $1.7 million from SPNT to First Chicago/Greenwich Bank. On June 15, 1989, Wymer deposited approximately $17,000 in interest into the SPNT account.

On June 28, 1989, Wymer wired $2,325,000 from SPNT to a personal account of his at the Mountain State Savings Bank, Ketchum, Idaho. The balance of the Mountain State account before the entry of the SPNT money was $500,000 and was also comprised of the funds of non-PDRA investment clients.

On June 30, 1989, Wymer transferred out of Mountain State $1,746,988.84 to escrow for a purchase of vacation property in Idaho, $55,616 in closing costs for the purchase, and $1,000,000 to the First Security Bank in Ketchum, Idaho. First Security transferred $1,000,000 to the seller of the Idaho property in the form of a loan to Wymer and kept the $1,000,000 transferred from Wymer's Mountain State account as security for that loan. On that same day, Wymer took title to the Idaho property.

On December 9, 1991, the SEC filed a civil action against Wymer, Denman, and another Wymer-controlled company, Institutional Treasury Management. On September 29, 1992, Wymer pleaded guilty to nine felony counts, including racketeering, securities fraud, mail fraud, bank fraud, and obstruction of justice. As part of his guilty plea, Wymer agreed to disgorge his interest in most of his assets, which would be sold and their proceeds placed into a fund to be distributed according to a plan by the SEC and

---

1. The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation.

approved by the district court. The Government determined that the proceeds of the forfeited property would be allocated to the victims in a pro rata manner.

On February 7, 1994, the district court approved the stipulation of the parties for sale of the Idaho property. The proceeds for the sale of the Idaho land are preserved in a separate account pending the final outcome of the PDRA's claim for the proceeds. While the net proceeds of the sale equal $1,042,636.82, the PDRA seeks an equitable lien for the full amount of the $1,812,604.84 it contends was used to purchase the Idaho property.

In its Memorandum of Decision and Order of September 13, 1994 ("Order"), the district court rejected the PDRA's claim and held that the proceeds from the Idaho property's sale should be added to the SEC's fund and distributed on a pro rata basis. The lower court believed that the PDRA did not adequately trace its funds to the purchase of the Idaho property "due to the numerous transactions which occurred in the accounts in question and by the commingling of funds involved in each transaction." The district court believed that there was no way to determine if the money transferred out of the SPNT and Mountain State accounts was solely the PDRA's or was a combination of the PDRA's and other investors' funds. The district court also concluded that, in any event, it would be inequitable to allow the PDRA to use tracing fictions to enhance its claim to restitution at the expense of equally innocent fraud victims.

The city of Palm Desert has joined in the PDRA's brief on appeal. The third-party claimants which opposed the PDRA's claim in the court below, comprised of the cities and redevelopment agencies of La Quinta, Loma Linda, and Sanger, the cities of Torrance, Indio, and Big Bear Lake, and the Coachella Valley Joint Powers Insurance Authority, have joined the brief of the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Jefferson Bank & Trust.

## II

Wymer defrauded many innocent parties. The fund created to make these parties whole is insufficient to allow full restitution to all victims. Rather than participate in the SEC's plan to distribute this inadequate fund pro rata, the PDRA seeks to better its position by using tracing fictions to make a claim to all proceeds from the sale of the Idaho property.

To allow the PDRA to succeed with this claim would frustrate equity. The district court correctly stated:

> This Court believes that where, as here, the struggle over the res derived from fraudulent conduct is between innocent parties, tracing should not and will not apply. It must be emphasized that the events surrounding the purchase of the Idaho property all occurred against the backdrop of Wymer's massive fraud scheme which involved thousands of transactions and commingled hundreds of millions of dollars of numerous investment advisory customers. It is within this context that the PDRA seeks to isolate a series of transactions executed in admittedly commingled accounts and to recover the full amount of proceeds therefrom to the detriment of all other defrauded customers. This inequitable distribution of funds requested by the PDRA is neither warranted nor justified.

> Instead of engaging in a tracing fiction, the equities demand that all Wymer's defrauded customer[s] share equally in the fund of pooled assets in accordance with the SEC plan. As the Supreme Court decided in the original "Ponzi" scheme case, *Cunningham v. Brown,* 265 U.S. 1, 12–13 [44 S.Ct. 424, 427, 68 L.Ed. 873] (1924), tracing fictions should not be utilized under circumstances involving multiple victims and commingled funds. Instead, the Court held that the equities demanded that all victims of the fraud be treated equally. *Id.*

We agree with the district court's eminently sensible statement of the law on this point. *Cunningham,* 265 U.S. at 12–13, 44 S.Ct. at 427 (rejecting tracing fiction where its use would promote unequal and therefore inequitable treatment of similarly situated fraud victims); *Securities and Exch. Comm'n v.*

*Elliott,* 953 F.2d 1560, 1569–70 (11th Cir. 1992) (district court did not "abuse its discretion" in refusing to allow fraud victims to trace and claim assets at the expense of other fraud victims), *rev'd in part on other grounds,* 998 F.2d 922 (11th Cir.1993); *Ruddle v. Moore,* 411 F.2d 718, 719 (D.C.Cir. 1969) (tracing fiction "has nothing to be said for it as a principle governing conflicting claims to restitution by equally wronged parties"); *In re Lemons & Assocs., Inc.,* 67 B.R. 198, 213–14 (Bankr.D.Nev.1986) ("[A] creditor cannot sufficiently identify or trace the trust res through a commingled fund where the fund is too small to satisfy the claims of similarly situated parties. To do so would allow that claimant to benefit at the expense of those who have equally strong equitable claims to the same fund."); *People v. California Safe Deposit & Trust Co.,* 175 Cal. 756, 167 P. 388, 389–90 (1917) (refusing to indulge in tracing fiction to allow bank's fraud victim to take full fraud amount from assets of bank in receivership because to do so would harm depositors who were "as much entitled . . . as petitioner to the favorable consideration of a court of equity."); Bogert, *The Law of Trusts and Trustees,* § 927 (rev. second ed.1982) (condemning use of tracing fiction to favor one victim over another); 5 *Scott on Trusts,* § 519 (4th ed. 1989 & Supp.1995) (same).

As in *Cunningham,* this is a case where "equality is equity." 265 U.S. at 13, 44 S.Ct. at 427. We therefore affirm.

AFFIRMED.