[Civ. No. 3833.    Second Appellate District, Division One.—May 24, 1922.]

T. P. BRYAN, Appellant, v. ELIZABETH J. PRESCOTT et al., Respondents.

[1] HUSBAND AND WIFE — ADVANTAGEOUS TRANSACTION WITH WIFE— PRESUMPTION — UNDUE INFLUENCE. — Where a husband obtains a great advantage from a transaction with his wife, the presumption of undue influence must prevail unless overcome by evidence clearly showing that undue influence was not used by him to obtain that advantage.

[2] ID.—EVIDENCE—PRESUMPTION NOT REBUTTED.—In this action by a surviving husband to quiet title to real property conveyed to him by his wife, the court was justified in finding from the evidence that the conveyance was not made freely or with knowledge of its effect, and that the plaintiff obtained an unfair advantage thereby.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. M. Starr for Appellant.

Victor L. Watkins for Respondents.

CONREY, P. J.—Action to quiet title to a lot described in the complaint. The premises are also referred to as 2130 Vallejo Street, in the city of Los Angeles. The plaintiff appeals from the judgment entered against him.

In the year 1904 the lot was conveyed by one Palmer to Ruhamah Young and her daughter Emma Brown as tenants in common, the consideration therefor being paid by Mrs. Young. At some time between the date of that deed and the year 1910 Mrs. Young married the plaintiff T. P. Bryan. In the year 1911 Emma Brown died, and it is conceded that whatever interest she had in the property passed to her husband, Woods G. Brown. On the thirteenth day of May, 1913, Ruhamah Bryan died. At the trial of this action it was stipulated that Mrs. Bryan left a will under which any interest that she had in this prop-

erty at the time of her death passed to the defendant Elizabeth J. Prescott. On the fifteenth day of January, 1912, Mrs. Bryan signed and acknowledged a deed purporting to convey the lot to the plaintiff, and he caused the same to be recorded. According to his testimony, the deed was delivered to him by his wife. Mr. and Mrs. Bryan were living on the premises at that time and until her death. After that time he continued in undisturbed possession, under circumstances hereinafter stated, until the year 1919. The complaint in this action was filed May 10, 1920.

The deed of Mrs. Bryan to the plaintiff recites a consideration of $100. The plaintiff testified that his wife did not make a gift to him of the property, but that the transaction was a matter of business; that he did not pay her any money at the time of execution of the deed; that he loaned her $30 before they were married; that he afterward paid for her a $100 note to a physician, which note had been given for professional services rendered to her before the marriage. He testified that he had an understanding and agreement with his wife that she would give the deed for $100, but he was unable to state any of the words used in their conversations on the subject. Within a few weeks after the date of this deed, the plaintiff obtained a loan of $1,000 by mortgaging this property. With $850 of this borrowed money he purchased from Woods G. Brown his interest in the property. This transaction is evidenced by a deed of date March 25, 1912, from Brown to the plaintiff. The admitted value of the property in dispute is at least $2,000. Plaintiff testified that at the time when Mrs. Bryan signed the deed to him, her mind was "as good as I ever saw her," and that it continued the same until a few days before her death. Yet in a letter written at some time during that period, by the plaintiff to the defendant, referring to Mrs. Bryan, he said: "I suppose you see by her letters that she is off on her mind. . . . She is not well by a long ways, that with her mind and age put her mind in bad form. . . . Her old age, and mind out of balance on many things, and from what I can learn, has always been so to some extent."

At the time of the death of Mrs. Bryan, the defendant, Mrs. Prescott, was living in the state of New York. She did not come to California until the 1st of January, 1919.

Three weeks later she obtained from the plaintiff the key to the house and went into possession of the property. Ever since that time she has occupied the same as her residence. She had been prevented by the death of her son and by other circumstances, from coming to California until 1919. The plaintiff and another witness testified that plaintiff gave Mrs. Prescott the key on her representation that she wanted to rent the property from him. She denies this. She went to see him at the Soldiers' Home, where he was staying at that time, although some of his furniture remained in the house on the premises that are here in litigation. She says that she asked him for the keys and he gave them to her. "He told me the things were all gone out of the home and he didn't know where they had gone to or who had taken them, and he gave me the keys to the home to move in, and I moved in with my little daughter and we lived there." After the commencement of this occupancy by the defendant, she for the first time learned that plaintiff had a deed to the property. Three or four weeks after the defendant moved into the premises, the plaintiff called there and a conversation took place between him and the defendant. She said, "I asked him how it was that my mother had willed me this property and deeded it to him. He said, 'As it is she didn't know it was a deed she was signing. She was ignorant on business.'" On the sixth day of April, 1913, Mrs. Bryan wrote to the defendant that she had given to Mr. Bryan "the deeds and receipts for this property. Mr. Bryan will keep them for you dear Bessie." The findings of the court state "that at the time said deed was so signed by said Ruhamah Bryan, now deceased, said Ruhamah Bryan was over the age of eighty years and very infirm and feeble in health and did not know or realize the purport of said instrument, and said instrument or said deed was never delivered by said Ruhamah Bryan to the plaintiff herein, with the intention of conveying her said property to the plaintiff herein as his property, but said Ruhamah Bryan thought she was conveying and intended by said deed or instrument to convey said property to plaintiff in trust for her said daughter, Elizabeth J. Prescott, one of the defendants herein. That at the time said plaintiff procured his said wife, Ruhamah Bryan, now deceased, to sign said instrument or

deed, the said plaintiff and his said wife were living together as husband and wife in said property hereinbefore described, and continued to live there together until the death of said Ruhamah Bryan, to wit, on or about the thirteenth day of May, 1913; that no adequate or sufficient consideration was given to the said Ruhamah Bryan, or received by her for the signing of said instrument or deed, and the only consideration that was given to said Ruhamah Bryan or received by her, if any at all was given to her or received by her for such, was the cancellation of an alleged debt in the sum of $110, which the plaintiff claims was owing to him by his said wife at that time, by reason of the payment by him several years previous to that time of a doctor's bill, in about the sum of $100, and previously owed by his said wife, and the advancement of about $10 by the plaintiff to his said wife, or for her benefit, some years previous to said January, 1912.''

Appellant contends that no evidence was produced in support of any charge of fraud, misrepresentation, duress, threat, or undue persuasion on the part of appellant to obtain his deed from Mrs. Bryan, and that without such evidence the effect of the deed was to convey to him both the legal title and the entire beneficial interest in the property. In support of this proposition he relies upon section 158 of the Civil Code, and the decision in *Tillaux* v. *Tillaux*, 115 Cal. 663 [47 Pac. 691]. The gist of the decision in *Tillaux* v. *Tillaux* is that the marriage relation does not *ipso facto* raise the presumption that a deed of conveyance from the husband to the wife has been the result of undue influence. It is summarized to this effect in *White* v. *Warren*, 120 Cal. 322, 325 [49 Pac. 129, 52 Pac. 723]. Nevertheless, in *White* v. *Warren*, where the question at issue was whether moneys advanced by the wife to the husband were received by him as a loan or as a gift, it was held that "it devolved upon the husband, who claimed to have received the gift, to prove that such gift was made without any undue influence on his part, the presumption being that, in the absence of proof to that effect, there was such undue influence used." This decision was based upon a construction of sections 158, 2235, and 2219 of the Civil Code. These sections are as follows: Sec. 158. "Either husband or wife may enter into any engagement or transac-

tion with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined in the title on trusts." Sec. 2235. "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence." Sec. 2219. "Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee within the meaning of this chapter. . . . " The court said: "Here, conceding what is claimed by the defendant as to the nature of the transaction, it is evident that he was greatly advantaged thereby, and, such being the fact, the burden rested upon him of disproving the presumption of undue influence created by the law under such conditions."

[1] So here, since it appears from the evidence that the plaintiff obtained a great advantage from the transaction with his wife, the presumption of undue influence must prevail unless overcome by evidence clearly showing that undue influence was not used by him to obtain that advantage. [2] On the evidence which came before the court in this case, we think that the court was justified in finding, as in effect it did, that the conveyance was not made freely or with knowledge of its effect, and that the plaintiff obtained an unfair advantage thereby.

In *Magee* v. *Brenneman*, 188 Cal. 562 [206 Pac. 37], considering the effect of section 2235 of the Civil Code, in a transaction between attorney and client, the supreme court said: "This does not mean that a trustee may not deal with his beneficiary. But if he does deal with him in such a manner as to obtain an advantage, the trustee has the burden of showing by evidence that the transaction was fair. . . . To place the burden on the beneficiary would be to put such contracts in the same category as those between parties occupying no relation of trust, to ignore the provisions of section 2235 of the Civil Code, and to deny this added protection to one whose confidence has been abused." (See, also, *Cox* v. *Schnerr*, 172 Cal. 371, 378 [156 Pac. 509].)

The conclusions above stated apply to the undivided half interest in the property obtained by the deed from Brown as well as to the interest which was vested in Mrs. Bryan. This results from the fact that the entire consideration paid to Brown was obtained by using the proceeds of a mortgage loan on Mrs. Bryan's property. (Civ. Code, sec. 853.)

Appellant next contends that he has become the owner of this property by adverse possession; that he held and possessed the same adversely to the defendant for a period of more than five years prior to the commencement of this action. There is no merit in this claim. The plaintiff never entered into possession under the deed. He never did any act to direct the attention of the defendant to the fact that he repudiated the obligation of his trust. On the contrary, the testimony of the defendant is to the effect that she, by correspondence, requested him to take care of the property for her until she came to California, and that she knew of no adverse claim by him. His subsequent conduct, in surrendering possession to her on her arrival here, is confirmatory of that evidence.

The judgment is affirmed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1922.

Lawlor, J., Lennon, J., and Richards, J., pro tem., concurred.

Sloane, J., and Waste, J., dissented.

Wilbur, J., was absent.