[Civ. No. 5055. Fourth Dist. Oct. 21, 1955.]

BARBARA FRYNE THURBER ANDROSKI et al., Respondents, v. WILLIAM GRANT THURBER, JR., Appellant.

David P. Hatch for Appellant.

Stanley E. Sparrowe and Stark & Champlin for Respondents.

BARNARD, P. J.—This is a suit to enforce a constructive trust involving a tract of land in the hills of Riverside County, about 5 miles north of Fallbrook. The defendant is a brother of the plaintiffs, and they are the children of Dr. William Grant Thurber, Sr. On June 6, 1935, Dr. Thurber deeded this land, which he then owned, to the defendant. Dr. Thurber lived in Santa Monica, and the defendant had for some two years lived on the ranch and cared for it.

This action was brought on January 24, 1952. The complaint alleged, among other things, that a most confidential relationship existed between Dr. Thurber and the defendant at the time in question; that Dr. Thurber reposed the greatest faith and trust in the defendant, and believed that he would faithfully perform all promises he made; that this situation was known to and accepted by the defendant; that on or about June 6, 1935, Dr. Thurber was ill, confined to his bed, and did not expect to survive; that plaintiff Barbara Androski was then a minor of the age of 8 years, plaintiff Orville Thurber was then a minor of 13 years, and the defendant was then an adult of the age of 22 years; that while thus confined to his bed and expecting to die Dr. Thurber informed defendant of his intention to deed this property to the defendant on the condition that the defendant promise and agree to hold it in trust for himself and the plaintiffs in equal shares; that defendant orally promised and agreed to hold said property in trust for that purpose; that thereafter, and on June 6, 1935, Dr. Thurber executed and delivered a grant deed conveying said property to the defendant; that shortly thereafter Dr. Thurber again informed defendant of his intentions relating to said property as theretofore alleged, and defendant again promised and agreed to hold said property in trust for himself and the plaintiffs in equal shares; that said deed was executed and delivered by Dr.

Thurber because of the trust and confidence he reposed in the defendant, and in the belief that defendant would faithfully perform his promise; that except for said promise and said trust and confidence Dr. Thurber would not have executed and delivered said deed, all as then known to and accepted by the defendant; that said deed was executed and delivered to defendant without any consideration other than as theretofore alleged; that at no time did Dr. Thurber intend to nor did he make a gift of said property to defendant, or of any interest therein in excess of the beneficial ownership of an undivided one-third interest therein; that on or about December 19, 1951, plaintiffs for the first time demanded of defendant that he convey to each of them an undivided one-third interest in said property; and that the defendant has refused to make such conveyances.

In his answer, the defendant denied the material allegations of the complaint and as affirmative defenses alleged title by adverse possession; that a decree entered in his mother's estate setting apart the land to him as a homestead was a final adjudication which bars the claims of the plaintiffs; that the complaint failed to state a cause of action; and that the action is barred by sections 318, 319 and 338, subdivision 4, of the Code of Civil Procedure.

The court found in favor of the plaintiffs on all of the issues raised. In addition to finding all of the material allegations of the complaint to be true, the court found a number of facts showing a particularly close and confidential relationship between Dr. Thurber and the defendant at the time in question; that the defendant enjoyed the use of said property from June 6, 1935, up to the trial of the action, and received all proceeds; that the defendant paid nothing as rent or otherwise, and plaintiffs received no proceeds therefrom; that the defendant made no expenditures during the years which resulted in any benefits to the plaintiffs, or which increased the value of said premises; that he was compensated for all expenditures he made by his use and occupation of the property and his receipts therefrom; that it is not true that defendant dealt fairly and justly with Dr. Thurber or with the plaintiffs with relation to said property, and not true that he has performed his promise to hold said property in trust for plaintiffs and defendant in equal shares; that it is true that the deed executed and delivered by Dr. Thurber to the defendant was a grant deed, absolute in form, but that said conveyance was made on defendant's oral promise to hold

said property in trust for plaintiffs and defendant in equal shares; that defendant's said promise so to hold said property was a continuing promise; that defendant did not enter into possession of said property under a claim of title exclusive of the rights of others; that defendant at no time informed plaintiffs of their interest in said property although he had many opportunities to do so; that defendant at no time communicated to the plaintiffs by his acts or otherwise that he claimed to be the absolute owner of the property; that he did not at any time prior to December, 1951, repudiate his obligation to them; that in December, 1951, the defendant for the first time repudiated his promise to Dr. Thurber, and for the first time refused to convey to plaintiffs their interest in said property; that the defendant acquired no title to said property by adverse possession and plaintiffs' claims are not barred by any lapse of time; that the plaintiffs are not estopped from claiming an interest in the property by the decree entered in the estate of defendant's mother setting apart said property to the defendant as a grantee of Dr. Thurber; that the defendant did not acquire any title by virtue of said decree; and that after said decree was entered defendant continued to hold said property, pursuant to his oral promise to Dr. Thurber, in trust for himself and the plaintiffs in equal shares.

Judgment was entered decreeing that the defendant holds title to this property in trust for himself and the plaintiffs in equal shares, and ordering him to convey an undivided two-thirds interest in said property to the plaintiffs in equal shares. A motion for a new trial was denied and the defendant has appealed from the judgment.

The appellant contends that the complaint fails to state a cause of action; that no fraud appears because there is no evidence that he made a promise without any intention of performing it; that there was no sufficient evidence of confidential relations between the grantor and grantee in this deed; that there was no evidence that such confidential relations were abused, if any did exist; that there was no sufficient evidence of a trust since the evidence fails to show the terms and purposes of the trust, or what defendant was required to do if he was held to be a trustee of the property; that there was no offer to do equity; that he acquired title by adverse possession; that the decree setting aside the homestead to him is a bar to this action; and that the action is barred by lapse of time and by laches.

In support of these contentions the appellant argues that he knew nothing about the deed until after it was recorded; that he did not promise his father either before or after the delivery of the deed that he would hold the ranch or part of it in trust for the respondents; that after the delivery of the deed he only promised his father to take care of the plaintiffs and keep the ranch as a home for them until they became of age or married, if anything should happen to the father; that his consistent refusals to recognize the claims asserted by the plaintiffs, his act in seeking and obtaining the setting aside of the homestead to him, and his subsequent acts in dealing with the property as his own, were sufficient to give notice of the hostility of his claims as against the plaintiffs; that there is no evidence that he made any promise before the execution of the deed; and that the evidence of his promise after the execution and delivery of the deed is of no consequence, as it could not have induced or influenced the delivery of the deed.

While the appellant denied having made any promise to his father or having had any conversation with his father in relation to this deed prior to its execution, and testified that he had refused to recognize respondents' claims to the property, to his father, in 1939, there was ample evidence to the contrary which fully supports the material allegations of the complaint and the court's findings. Dr. Thurber testified that in March or April, 1935, he was confined to his bed and did not expect to survive his illness; that he sent for the appellant and told him that he expected to die and wanted to avoid court proceedings where there were minor children, and that he wanted to deed the property to the appellant in trust for himself and the two children; that he asked the appellant if he would take the property and see that these wishes were carried out; that the appellant replied, "Dad, you don't need to worry, I will do just exactly what you want and see that the children get their third of the ranch"; that about that time he asked Mr. Hatch, who was then his attorney, to prepare a deed; that Mr. Hatch advised against it; that his health was growing worse, and toward the middle of the year he again asked Mr. Hatch "to make a deed to Bill, in trust, for the children, and he said, 'All right' "; that he executed the deed, prepared by Mr. Hatch, and mailed it to the appellant; that about the end of June, at his bedside, he again urged the appellant to take care of

the property for all three of them, and to help the children in every way he could; and that the appellant said, "Don't worry, Dad, I will keep the ranch for them and myself, and see that they get their share, and I will take care of them in the meantime." Dr. Thurber's present wife, who was then his nurse, testified to the same effect as to both of these conversations. It appears without dispute that the deed was executed on June 6, and recorded on June 8, 1935.

Certain letters written by Dr. Thurber and the appellant were received in evidence. On September 11, 1939, Dr. Thurber wrote to the appellant, saying that he had deeded the property to him in trust for all three children, an equal undivided one-third to each, and that he had done this when he believed he might not live, and because he did not want the property dissipated in court costs. He then stated that he had no right to ask the appellant to deed the ranch back but suggested, because of changed conditions, that the appellant deed the ranch back to him since with his ability to put money into the ranch "your third interest will be worth more than the whole ranch is now or what you can make it worth many times over." He then reviewed the existing circumstances in some detail and asked for a yes or no answer. The appellant answered this letter on September 17, 1939, expressing the opinion that "together we can make a go of it in a short time while by myself with my small income it would take considerably longer," and asking his father to come to the ranch and talk the matter over. In this letter he did not deny any of the circumstances surrounding the execution of the deed, as set out in Dr. Thurber's letter. On June 8, 1940, Dr. Thurber wrote to the appellant, saying that it had occurred to him that the appellant might decide that his "solution of the ranch would be to sell," and asked him "If that should be the case would you intend to give Babs and O. B. their third of the proceeds." He then said that the reason he was asking this was that they were both minors and a guardian would have to be appointed in court, which would be expensive and cumbersome. He then said he believed it would serve all interests for the appellant to deed the place back to him and "let me give you your part and then there will not have to be any court procedures." On June 11, 1940, the appellant wrote to Dr. Thurber, saying he had not figured on selling the ranch; that "I believe it will be a haven for us all if war is declared"; and that "If we ever have to get rid of it or anything like that, Sis & Steve & you will all

be with me." (Orville B. Thurber was commonly called Steve.) On December 6, 1946, Dr. Thurber wrote to the appellant, saying that he had had a letter from Mr. Hatch stating that it was necessary to probate "your mother's Will in order to clear the title." He then said "If you are selling the ranch do you intend to give O. B. and Barbara their one-third of the proceeds as you and I agreed upon at the time I transferred the property to you with your promise that you would hold it in trust to be shared equally amongst the three of you. If you do intend to give them their third each it will save a lot of fuss, bother and expense for all concerned. I am proceeding now to probate your mother's Will and would like to have your answer promptly." The appellant replied to this letter on December 12, 1946, saying that he did not figure on selling the ranch, and that the reason he was having "Dave" clear the title was so he could get a state loan through the G.I. setup, to get money to improve the property. He then described the improvements he desired to make and described conditions on the ranch, but made no denial of the statement in his father's letter concerning the manner and purpose in and for which the property had been conveyed to him.

While there was evidence that the appellant did not accede to his father's request to reconvey the property to him there is no evidence that he had, during these years, indicated in any way to the respondents or to anyone else that he intended to repudiate the promise made to his father. Dr. Thurber also testified that when he asked the appellant to reconvey the property to him in 1939-1940 he did so because he then had more money than the appellant had and could increase the value of the ranch for the children; that "It wasn't that I wanted it for myself"; and that he did not tell the appellant or anyone else at that time, or at any time, that he himself claimed any right to the ranch. The appellant testified that he had never at any time told the respondents that he refused to recognize their interests in the ranch, that he never told them they had any interest in the property, and that neither of them had ever asked him to convey the property to them prior to December, 1951.

The evidence amply supports the findings that the appellant orally promised to hold said property in trust for himself and the respondents, in equal shares; that the property was deeded to him in reliance on that promise; that this promise

was a continuing one; and that it was not repudiated by the appellant until December, 1951; as well as the other material findings. There was no evidence that the respondents knew of the circumstances under which this deed was given prior to 1951, and no evidence that the appellant repudiated his promise in any way, or disclaimed his intention to hold a part of the property in trust for the respondents, prior to that time.

Appellant's contentions that the deed, absolute in form, is conclusive; that the evidence was insufficient to show any form of fraud or certain required elements of an express trust; that he acquired title by adverse possession; and that the respondents' rights were barred by the lapse of time and by laches cannot be sustained. It would serve no useful purpose to review the cases cited in support of these contentions. This is not an action to enforce an oral express trust, or one based upon the claim that the original promise was fraudulently made. As was said in *Steinberger* v. *Steinberger*, 60 Cal.App.2d 116 [140 P.2d 31], this is "an action to enforce a constructive trust which it is claimed arose by operation of law upon the repudiation of the promise to reconvey," or to convey to others a portion of the property. Under the evidence here produced, and the facts found by the court, this case is governed by the principles discussed and applied in such cases as *Cooney* v. *Glynn*, 157 Cal. 583 [108 P. 506]; *Orella* v. *Johnson*, 38 Cal.2d 693 [242 P.2d 5]; *Allen* v. *Meyers*, 5 Cal.2d 311 [54 P.2d 450]; *O'Brien* v. *O'Brien*, 50 Cal.App.2d 658 [123 P.2d 877]; *Robertson* v. *Summeril*, 39 Cal.App.2d 62 [102 P.2d 347]; and *Steinberger* v. *Steinberger*, 60 Cal.App.2d 116 [140 P.2d 31].

The rights of the respondents were not affected by the order made in the estate proceedings. Dr. Thurber had deeded this property to the mother of the children in 1929 or 1930, and she had subsequently declared a homestead thereon. She died on January 23, 1934. Dr. Thurber then became the owner of the property, which was then worth about $3,000. In order to clear his title for the purpose of getting a loan the appellant had steps taken in the probate proceedings, under the homestead laws, to have the property set apart to him as the successor to Dr. Thurber. While that order was effective in clearing the legal title, as it then stood in the appellant, it was in no sense a final judgment in favor of the appellant as against these respondents, and was not

binding upon them with respect to the issues presented in this action.

The judgment is affirmed.

Griffin, J., concurred.

A petition for a rehearing was denied November 9, 1955, and appellant's petition for a hearing by the Supreme Court was denied December 14, 1955.