[Civ. No. 21098. Second Dist., Div. Two. Nov. 18, 1955.]

JOHN C. LEEMHUIS, JR., et al., Respondents, v. ANN MARGARET LEEMHUIS, Appellant.

*Assigned by Chairman of Judicial Council.

118

D. Chase Rich for Appellant.

LeSage & Bowman and Thomas W. LeSage for Respondents.

MOORE, P. J.—The judgment herein decrees that defendant, Ann Margaret Leemhuis, by certificate 33 holds 102 shares of the capital stock of Airfloor Company of California, Inc., as trustee for plaintiffs, owners in fact; that she transfer title to plaintiffs and do all things necessary to vest ownership of the shares in plaintiffs, subject to a life estate in Ann Margaret. She now appeals on the ground that the evidence does not support the finding of the trust agreement.

Respondents are the sons of Johannes Leemhuis, Sr., who in April, 1953, at the age of 62 died intestate in Los Angeles County. He was of Dutch descent. In 1938 he migrated to California from South Africa with his wife and five children. Mrs. Leemhuis died in 1944. Her children were all then adults. Johannes met appellant in 1945 and they resided together as husband and wife until his decease. They celebrated a ceremonial marriage in November, 1952.

In 1949 Johannes invented a device to aid in the heating of buildings, and applied for a patent. Respondents joined him in perfecting the new invention. In 1950 the four formed a partership for the manufacture and sale of the device and within a short time they organized Airfloor Company of Cali-

fornia and transferred all the assets of the firm to the corporation which thereafter manufactured Johannes' device. Its directors were five, including respondents, one Olafson, and the father who was president. John was the only son who worked actively for the corporation. Rudolph and Louis merely attended the board meetings. At the time of the trial, June, 1954, they had issued 440 shares, 102 of which belonged to decedent. Appellant purchased 10 shares for $1,000. The stock issued to respondents was divided among them on the basis of the amount of work done on the invention, giving Johannes 40 per cent, John 12 per cent, Louis 40 per cent and Rudolph 8 per cent.

On April 20, 1953, Johannes died intestate. As surviving spouse, Ann succeeded to one-third interest in all the assets of his estate. In addition, she had acquired a note for $23,500 secured by a deed of trust, and other assets. Despite such acquisitions, appellant laid claim to the 112 shares of the corporation which she and decedent had assigned to him and her in joint tenancy. The question for decision is whether that assignment of the 112 shares was concomitant with an agreement that the respondents should be owners of such shares after appellant shall have enjoyed a life estate in them. The evidence appears to give an affirmative answer to such inquiry.

About 40 days prior to Johannes' death, he prepared a memorandum at the home of appellant's sister, Mrs. Reed, where he and his wife then resided. Mrs. Reed was present during the discussion of decedent and appellant. At no place in the record do we find any testimony of Mrs. Reed in support of appellant's contention to the effect that at her husband's death she became owner of all the shares. Appellant testified that she took decedent's dictation of his letter to the Corporation Commissioner; that her notes of the dictation had not been preserved; that Johannes wrote the memorandum in longhand and that she has consigned it to the ash can; that after her letter to the commissioner, a certificate for 112 shares was issued and placed in escrow with Attorney McHaffie; that she gave no consideration for the joint tenancy.

From the testimony of several witnesses, it was established that for many years prior to March 8, 1953, Johannes had announced and adhered to *a rule* that the stock of the Airfloor Company was to remain in the men of the Leemhuis family. Such rule was repeated among the members of that family until Johannes' death. Appellant declared the rule

after her husband's death at a conference with respondents as follows:

"Boys, I want to admit that the stock still does not belong to me. It may be turned over to me but it still belongs to one person, and we are four to see what is going to be done with that stock . . . it is still your daddy's stock . . . he just left it to me in name only . . . I am going to distribute it . . . the way I want . . . It is still his stock, it is not mine. . . . Your father didn't want the two girls in on it, just the three boys . . . I am sticking to your father's rule, the three boys only . . . I am not going to alter it."

She testified, "They were rules made by him and I wanted to abide by them . . . He made those rules prior to our marriage. It was told to the three boys and myself . . . It was something he would say from time to time at various places." That conference was held September 24, 1953. Her deposition was taken April 10, 1954, when she deposed that at the conference the stock was not discussed; denied her statement that the stock had been given to her "in name only." But a playing of the wire recording established that she had made to respondents all the statements which she repudiated in court.

She admitted that she proposed the conference "for the purpose of discussing certain matters. . . . The conference was at the plant in South Gate." At the trial, she testified that it was a friendly conference, but denied that she had said that she held title to the stock in name only or that she had said, "It is still your daddy's stock; he just left it to me in name only." After the recording had been played, appellant testified, "Well, it pertains to the stock that should be held in the Leemhuis name and that it should go to the boys and the grandchildren."

In addition to the foregoing, Barbara Leemhuis (wife of John) testified that at her home a few days after the passing of Johannes, Sr., appellant visited her where she recited decedent's "rule" with respect to the stock of the Airfloor Company and stated that decedent had placed the stock in joint tenancy because he "was undecided as to how to leave the stock" among the three sons and that the joint tenancy was to continue only during his trip to Africa and that decedent knew he could trust appellant to divide the stock fairly among the boys. Also, Barbara testified that on the occasions of the visits she and her husband made to decedent's home during the three years prior to his death, decedent, at

least once a week, stated that the Airfloor stock was a "family affair . . . wanted the boys to be sole runners of the business . . . and it should not go outside of the family."

Such evidence establishes that appellant held the title of the corporate shares in trust for the benefit of respondents. The case of *Grace* v. *Rodrigues,* 111 Cal.App.2d 131 [243 P.2d 906], supports the contention of respondents. The mother of the litigants, without consideration, conveyed her Elmhurst property to the defendant seven years prior to the mother's decease. At one time, Mrs. Rodrigues stated that when her mother came out of the hospital, she would make everything all right; at another, she said, "My mother said to sell the property and divide it between my brother and I"; subsequently she said to Mrs. Grace (her sister), "I will give you what's coming to you." In a conversation among members of the family, there had been quite a little conversation in reference to the property's being equalized among the three children, and appellant said: "it was no more than right that each one of us should have our share as my mother wanted it." At another conversation among the three children, appellant said she was going to sell it and divide it among the three. To Mrs. Govey who visited appellant at Grace's home, appellant said, "I will sell the property and divide it between you and Louisa and the three of us." Despite the appellant's denials of the above statements, the court found that she held the Elmhurst property in trust for herself and respondents. The judgment was affirmed with the announcement that "although it is necessary in order to establish a trust, to offer clear and convincing proof, such proof may be indirect, consisting of acts, conduct, and circumstances"—citing *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 173 [168 P.2d 946]; *Airola* v. *Gorham,* 56 Cal.App.2d 42, 49 [133 P.2d 78]. ■ A voluntary trust is created as to the trustor and beneficiary by any words or acts of the trustor, indicating with reasonable certainty an intention to create a trust, its subject, purpose and beneficiary. ■ Such trusts may be proved by parol evidence that is clear, satisfactory and convincing. (Civ. Code, § 2221; *Kobida* v. *Hinkelmann,* 53 Cal.App.2d 186, 188 [127 P.2d 657].)

■ Whether the finding of a trust is justified, it is necessary to take into consideration all the evidence. (*Ibid.*) Pursuant to such rule, the weight of the evidence in the instant cause preponderates to such extent that any reasonable person must approve of the conclusions derived by the

trial court. ■ The finding of an express oral promise to hold in trust may be based "solely on inferences from circumstances, behavior and posterior declarations of transferor and transferee without any indication of what was actually spoken between them." (*Casey* v. *Casey,* 97 Cal.App.2d 875, 882 [218 P.2d 842].) ■ Silent acquiescence on the part of the grantee is sufficient proof of the trust where the grantee has knowledge of the grantor's intention and understanding of the transaction. (89 C.J.S., p. 120; 65 C.J. 472; see *Box* v. *Box,* 146 Neb. 846 [21 N.W.2d 868].)

■ Inasmuch as the appellate court must accept as true all evidence tending to establish the correctness of a finding as well as all inferences which might reasonably have been thought by the trial court to lead to the same conclusion (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157]), it must be said that the record in this action abundantly supports the findings and justifies the judgment.

There is no substance in the claim of appellant that she paid a consideration for the transfer of the 102 corporate shares to her name as a joint tenant with her husband. She testified that she gave no consideration therefor. From that and all the evidence bearing upon the subject, the court was justified in finding that she paid no consideration for the transfer of the shares to appellant as a joint tenant with her husband.

■ The theory now advanced that appellant's transfer of her 10 shares to the joint tenancy was a valuable consideration for the transfer by decedent of his 102 shares to her is not applicable to the facts as found. If appellant held the 102 shares in trust for respondents, then she held her 10 shares in trust for herself. She is in the identical position of a resulting trustee who has paid a small fraction of the cost of the corpus of the trust. She is trustee for Leemhuis heirs to the extent of decedent's contribution to the entirety. "If one party pays only a part of the consideration, the party taking the title to the whole land becomes a trustee for the other party, pro tanto . . . payment of part of the consideration carries with it a proportional interest in the land. (*Gerety* v. *O'Sheehan,* 9 Cal.App. 447, 449 [99 P. 545].) It follows that appellant's transfer of her 10 shares to the joint tenancy does not defeat the trust in which she holds the 102 shares for respondents.

Appellant assigns as prejudicial the court's rulings which required her to testify to certain privileged conversations

with her husband (a) at the time (March 9, 1953) they authorized the transfer of the 112 shares to the joint tenancy; (b) that the husband desired his shares to go to his sons; (c) with reference to the note of March 9, 1953, for $23,500. The record contains nothing to indicate that such conversations were intended to be confidential. ▮ The privilege is to be strictly construed. ▮ The burden was on appellant to establish that the conversations came within the purview of Code of Civil Procedure, section 1881, subdivision 1. (*Tanzola* v. *De Rita,* 45 Cal.2d 1 [285 P.2d 897].) ▮ The test of whether a conversation between spouses is admissible is whether the testimony elicited "entailed a disclosure of any marital communication." (*Ibid.*) ▮ The inhibitions of subdivision 1 of section 1881 may be waived. (*In re Strand,* 123 Cal.App. 170, 172 [11 P.2d 89].)

Appellant waived the privilege, if it existed, by her prior testimony that the letter of March 9, 1953, had been dictated to her by her husband and that her sister, Mrs. Reed, heard it. ▮ The rule of privilege as to communications between attorney and client (*Sharon* v. *Sharon,* 79 Cal. 663, 677 [22 P. 26, 131]; *Mitchell* v. *Towne,* 31 Cal.App.2d 259, 265 [87 P.2d 908]) applies to conversations between spouses. ▮ Where communications between husband and wife are not confidential, they are not privileged. (*Horowitz* v. *Sacks,* 89 Cal.App. 336, 344 [265 P. 281].) Also, prior to any objection to the admission of the conversations, the letter of March 9 had been received on stipulation. Moreover, before appellant made her objections to the conversations, she had freely and duly given her deposition whereby she testified that she had had no conversations with decedent with reference to the transfer of the shares. By her silence, her acquiescence and her active participation in conversations and events, appellant waived such privilege as she might have enjoyed.

▮ But if the objections by appellant had been valid on all other grounds, the court committed no prejudicial error by reason of the circumstances that (1) the facts adduced by such conversations were proved by other testimony and (2) in each instance appellant either denied the statement specified in the question or gave evidence favorable to her own contention. Inasmuch as all alleged confidential communications in support of appellant's theory were rejected by the court, there could have been no prejudice suffered by appellant.

It was not error to require appellant to testify with reference to the $23,500 note which had been placed in the joint tenancy of the spouses. No claim is asserted to that note by respondents.

Requiring appellant to give her testimony for the second time under 2055, Code of Civil Procedure, was a matter resting in the sound discretion of the court. She first denied certain statements attributed to her. After the wire recording of her conversation had been played to her, it was proper to allow her to explain her recorded words.

It was not error to admit into evidence the memorandum of the agreement of respondents and decedent, dated July 8, 1949, showing their division of the corporate shares under four different sets of circumstances. It reveals in writing the intention of decedent some four years prior to his decease and that such intention was consistent with his "rule" and his avowed intention in his lifetime.

Judgment affirmed.

Fox, J., and Ashburn, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.