[Civ. No. 5694.   Fourth Dist.   June 8, 1959.]

HERMINA GONCALVES TEIXEIRA et al., Respondents, v. EMILY L. DOMINGOS, Individually and as Administratrix, etc., Appellant.

Lopez & Hyde and Clarence H. Wilson for Appellant.

John H. Machado for Respondents.

SHEPARD, J.—This is an action seeking the declaration of a resulting trust respecting land alleged to have been received under trust conditions, and also to impress the same resulting trust on the rents, issues and profits thereof.

Maria Delfina Domingos (hereinafter referred to as Delfina) was the mother of four children, John, Frank, Maria (Domingos) Toste and Hermina Goncalves Teixeira. Plaintiffs herein are Delfina's daughter Hermina Goncalves Teixeira and Delfina's grandchildren (by her deceased daughter Maria Domingos Toste), Joe Toste, Frank Toste, Jr., Manuel Toste, Mary Toste, Rose Drewes and Alice (Toste) Carrigg. Rose Drewes and Alice (Toste) Carrigg will hereinafter be referred to as the twins. Emily L. Domingos, the surviving wife of Frank G. Domingos, is sued herein in her individual capacity and also as administratrix of the estate of Frank G. Domingos, and will hereinafter be referred to as the defendant. John Domingos will hereinafter be referred to as John, and Frank Domingos as Frank. Defendant (Emily Domingos) has remarried and now uses the name of Verissimo.

Prior to February, 1933, John and Frank established and operated a dairy ranch and herd in Kings County, later moving to Tulare County, and finally purchased a 420-acre tract of land in Tulare County, which will hereinafter be referred to as Parcel 1. John died on March 1, 1933, shortly after this purchase took place. His estate was probated and his undivided one-half interest in Parcel 1 was distributed to Delfina, the mother. In 1937, Frank approached Delfina to secure from her a deed for her one-half interest in Parcel 1, and it is alleged that as a consideration for this deed he promised her to hold such one-half interest during the minority of the twins

for the use and benefit of Delfina's heirs, and upon the twins reaching their majority to distribute such trust property to her heirs. Delfina did execute a gift deed from herself to Frank covering her one-half interest in said Parcel 1. She died on October 6, 1937. Prior to her death Frank went on a visit to the Azores Islands, Portugal, and the deed was recorded on his return. Frank continued to operate the property, retaining the rents, issues and profits thereof. On April 28, 1943, Frank married this defendant. On December 31, 1945, Frank acquired through probate sale certain property in Kings County which, together with other property acquired by him in the same county, totaled 141.38 acres. This property will hereinafter be referred to as Parcel 2. His separate interest in this property was cleared up by quitclaim deeds. On July 21, 1948, Frank executed deeds of gift transferring both Parcel 1 and Parcel 2 to this defendant. Frank continued to operate these properties and retained for his own use all of the rents, issues and profits thereof, but in the spring of 1948 sold all of the livestock, rented out the ranch and left for the Azores Islands, the defendant accompanying him. Frank died on March 2, 1949 and the defendant returned to America when the gift deeds above referred to, from Frank to herself, were delivered to her and recorded August 16, 1949. The twins reached their majority on December 4, 1950, and this action was commenced on February 13, 1951. In April, 1952, this defendant purchased 320 acres more in Tulare County for the agreed purchase price of $81,180, of which $19,180 was paid in cash and a trust deed given in the amount of $62,000 covering Parcel 1. This land we will hereinafter refer to as Parcel 3. The trial court gave judgment for the plaintiffs against the defendant declaring ownership in the plaintiffs of an undivided one-third interest in Parcels 1 and 2, and an undivided one-sixth interest in Parcel 3. Defendant appeals.

Defendant's first contention is that the evidence is insufficient to support the court's finding ''That subsequent to the death of said Maria Delfina Domingos and that to the date of death of said Frank G. Domingos, also known as Frank Domingos, on the 2nd day of March, 1949, there existed a confidential relationship between said Frank G. Domingos and the plaintiffs herein.'' At the outset it is well to have in mind that rule of appellate procedure which has been heretofore so often repeated, but which appellants seem constantly to forget.

██ ''In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all

legitimate and reasonable inferences indulged in to uphold the verdict if possible. ■ It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. ■ When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.'' (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [1] [45 P.2d 183]; *Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1, 13 [2] [47 P.2d 462]; *Raggio* v. *Mallory*, 10 Cal.2d 723, 725 [1] [76 P.2d 660]; *Estate of Bristol*, 23 Cal.2d 221, 223 [2] [143 P.2d 689].)

■ Likewise, while it is true that the courts have frequently stated that clear and convincing evidence is required to justify a court in finding that a deed which purports to convey land absolute in fee simple was intended to be, in fact, one creating a trust, such rule is primarily for the trial court's guidance and if there is substantial evidence to support its conclusion the determination is not open to review on appeal. (*Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [6] [141 P.2d 732]; *Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [1] [147 P.2d 583]; *Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [2] [158 P.2d 3]; *Hansen* v. *Bear Film Co., Inc.*, 28 Cal.2d 154, 173 [4] [168 P.2d 946].)

■ The evidence in this case shows that Frank approached Delfina to secure a deed to her one-half interest in the 420 acres; that she at first refused; that later, under persuasions of Frank's attorney and under Frank's promise to hold the property in trust for the use and benefit of her heirs until the twins reached the age of majority and to thereupon distribute it to her heirs, she did make a deed to Frank; and that the consideration for such deed was such promise. Numerous witnesses testified to statements made by Frank to this effect, and likewise that Delfina herself made such a statement which was immediately communicated by the witness to Frank. Under this state of facts the law itself imposes a trust relationship and this trust relationship continues during the life of the trust. It is fiduciary in nature, and places the trustee in a fiducial relationship with the beneficiaries of the trust. (*Devers* v. *Greenwood*, 139 Cal.App.2d 345, 348 [293 P.2d 834]; *South* v. *Wishard*, 146 Cal.App.2d 276, 284 [6] [303

P.2d 805]; *Estate of Cover*, 188 Cal. 133, 143 [4] [204 P. 583]; *Walter H. Leimert Co.* v. *Woodson*, 125 Cal.App.2d 186, 189 [270 P.2d 95]; *Kinert* v. *Wright*, 81 Cal.App.2d 919, 925 [185 P.2d 364].) The cases of *Bacon* v. *Soule*, 19 Cal.App. 428 [126 P. 384], *Cohn* v. *Goodday*, 191 Cal. 615 [217 P. 756], *Estate of Lingenfelter*, 38 Cal.2d 571 [241 P.2d 990], *Estate of Jamison*, 41 Cal.2d 1 [256 P.2d 984], cited by defendant, are entirely consistent with the views above expressed.

Defendant contends that the evidence is insufficient to support the finding that Delfina and Frank together owned and operated a dairy on the real estate, and that they possessed livestock thereon. We are unable to agree with this contention. The evidence shows that Frank and John operated and apparently owned the dairy, together with the livestock. That dairy was about to be moved to Parcel 1 when John died. The livestock did not go to Delfina by the decree of distribution from John's estate, but she apparently believed she owned an interest therein and Frank, in 1937, was attempting to secure a transfer thereof to him from her so that he also apparently believed she had an interest in the stock. We are unable to discover any evidence as to how the ownership of John's share in the stock ever passed to Frank. Delfina was John's sole heir. Defendant herself testified that she knew Frank and John were running a dairy business together, and she knew of no transfer or bill of sale from John or Delfina to Frank.

Defendant next contends that the finding that the conveyance of Parcel 1 to Frank was made on condition that he agree to hold the property in trust for himself and plaintiffs and that no gift was intended by deed, is not supported by the evidence. While it is true that the evidence is conflicting and that the trial court, depending on the credibility it gave to various witnesses and how it weighed the evidence, might have decided differently, it is also true that there was evidence from several witnesses that both Frank and Delfina had stated to them that the trust arrangement whereby Frank was to hold the property in trust for Delfina's heirs (of which Frank was one) and to distribute to her heirs at the time the twins reached majority, was the real consideration for the transfer to Frank of Parcel 1. The evidence here discloses a close family relationship between John, Frank and Delfina, and also for several years between all of them and the twins. Putting together all of the evidence it indicates not only close

family ties but also confidential relationships between Delfina, Frank and John. The various statements made by Frank as to the actual conversation and the existence of the trust itself forces us to the conclusion that the finding of the trial court was amply supported by the evidence. (Civ. Code, §§ 2223, 2224; *Atwood* v. *Elwood*, 132 Cal.App.2d 761, 768 [2] [283 P.2d 43] ; *Steinberger* v. *Steinberger*, 60 Cal.App.2d 116, 121 [2] [140 P.2d 31] ; *Airola* v. *Gorham*, 56 Cal.App.2d 42, 47 [5] [133 P.2d 78] ; *O'Brien* v. *O'Brien*, 50 Cal.App.2d 658, 659 [1] [123 P.2d 877] ; *Leemhuis* v. *Leemhuis*, 137 Cal.App. 2d 117, 122 [2] [289 P.2d 852].) The cases of *Cox* v. *Schnerr*, 172 Cal. 371 [156 P. 509], *Gammill* v. *Nunes*, 104 Cal.App.2d 185 [231 P.2d 86] and *Kent* v. *First Trust & Savings Bank*, 101 Cal.App.2d 361 [225 P.2d 625], cited by defendant, entirely support the views hereinbefore stated.

Defendant next contends that there is no evidence to support the finding of the trial court that the defendant held in trust a one-sixth interest in what is known as the dairy ranch, herein referred to as Parcel 3. We think this contention is not well founded. The trial court was entitled to take the view from the evidence adduced that from the inception of the transfer to Frank from Delfina, Frank absorbed and retained for his own use all of the rents, issues and profits of the trust property; that they were entirely commingled; that the only property this defendant received, owned or operated was that which came to her from Frank without valuable consideration; that she herself retained all of the rents, issues and profits and that they were all commingled together and formed a part of the whole; that this action was filed February 13, 1951, and fully informed her of the intention, desire and purpose of plaintiffs to have the court declare a resultant trust and to pursue the trust property; that she imposed a $62,000 deed of trust on the original trust property (Parcel 1) in order to make the purchase of Parcel 3; and that she presented no evidence of any kind to indicate a segregation of Frank's own interest from the trust property nor of her own interest from the trust property. It has long been the rule in California that where "the one party pays only a part of the consideration, the party taking the title to the whole land becomes a trustee for the other party, *pro tanto*." (*Gerety* v. *O'Sheehan*, 9 Cal.App. 447, 449 [99 P. 545].) "When the money or property of the trustor can be traced into a particular fund or deposit,

204

where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust." (*Newport* v. *Hatton,* 195 Cal. 132, 150 [15] [231 P. 987].) ▮ We deem it unnecessary for a beneficiary who seeks the court's help in imposing a resulting trust to file a new or amended complaint when the trustee, after the filing of the original action, continues to deal in the trust property, encumber it and buy new properties. In our view, if this were required there would never be an end to this class of litigation. The trial court has the right once the action is filed to adjudicate the trusteeship in all directions that the trustee may move with the property during the time following the filing of the original action. (*Newport* v. *Hatton, supra; Church* v *Bailey,* 90 Cal.App.2d 501, 504 [2] [203 P.2d 547]; *Mitchell* v. *Dunn,* 211 Cal. 129, 136 [5] [294 P. 386].)

▮ Defendant's next contention is that the court's finding that the second cause of action of the plaintiffs is not barred by the statute of limitations, is not supported by the evidence. With this we cannot agree. The twins did not become of age until December 4, 1950, and the trust did not mature for distribution until that time. This action was commenced February 13, 1951. (*Androski* v. *Thurber,* 136 Cal.App.2d 471, 478 [288 P.2d 898]; *Dabney* v. *Philleo,* 38 Cal.2d 60, 66 [237 P.2d 648]; *Airola* v. *Gorham, supra,* 54 [9].) The cases of *Brazil* v. *Silva,* 181 Cal. 490 [185 P. 174] (alleging fraud in procuring a will and starting the toll date of the statute of limitations as of the filing of the complaint), *Cox* v. *Schnerr, supra* (being an action to quiet title based on a deed procured by fraud), *Campbell* v. *Genshlea,* 180 Cal. 213 [180 P. 336], *Page* v. *Garver,* 146 Cal. 577 [80 P. 860], and *Murphy* v. *Crowley,* 140 Cal. 141 [73 P. 820] (imposing a five-year statute of limitations on cancellation of deeds procured by fraud) in no way contravene views we have expressed.

▮ The defendant next contends that there was no sufficient finding that defendant held Parcel 2 in trust for plaintiffs. The findings of ultimate fact are, in general, that Frank held Parcel 1 in trust for himself and for these plaintiffs; that he received all the rents, issues and profits thereof; that he converted the accumulations thereof to the purchase of Parcel 2 and received the rents, issues and profits thereof; that plaintiffs knew nothing of this nor of the transfer to defendant until after the death of Frank in 1949; and

that the conveyance to defendant was without consideration. We think these, coupled with the other findings, are sufficient to support the trial court's conclusion of law that defendant holds all of these parcels in trust as therein described. (*Atwood* v. *Elwood, supra,* page 770 [5]; *Airola* v. *Gorham, supra,* page 45 [3]; *O'Brien* v. *O'Brien, supra,* page 660 [2]; *Church* v. *Bailey, supra,* page 504 [2]; *Bryan* v. *Prescott,* 57 Cal.App. 779, 783 [2] [207 P. 1028]; *Mitchell* v. *Dunn, supra,* page 136; *Leemhuis* v. *Leemhuis, supra,* page 123 [8].) We find nothing in the authorities cited by defendant in any way contrary to the above view.

Next, defendant contends that the trial court committed reversible error in admitting the testimony of a witness that Frank said that the contract was made by his (Frank's) attorney John de Freitas. It must be remembered that the word "contract" here used apparently referred to and was a part of a previous recitation of the witness relating to a statement of Frank, in which Frank said of Delfina: "She made a contract with him for him to hold the ranch and the cows and the rents until the two twin children were 21 years. When they had attained 21 year, he was to divide with the heirs, the inheritance of his mother." Delfina was illiterate, which made the question of who the attorney de Freitas was acting for of additional importance in determining both Frank's and Delfina's state of mind. (*Whitlow* v. *Durst,* 20 Cal.2d 523, 525 [127 P.2d 530]; *Lauricella* v. *Lauricella,* 161 Cal. 61, 71 [118 P. 430]; *Grace* v. *Rodrigues,* 111 Cal.App.2d 131, 137 [243 P.2d 906]; *Airola* v. *Gorham, supra,* page 49, 53.) Defendant comments that the statement "made no sense." If so, it was not of such prejudicial character as to warrant a reversal. Furthermore, this statement was apparently made at a time when Frank still held title. In any event, in view of the very substantial character of the other evidence we are unable to declare this to be reversible error. The cases cited by defendant all relate to statements in derogation of title, made after declarant parted with title, and are clearly distinguishable.

Defendant next complains that the court failed to directly state in its judgment that the property would remain subject to the $62,000 deed of trust. We think the wording of the court's judgment clearly and inevitably is to that effect, and that the obligation of the $62,000 deed of trust is one which under the judgment must be paid pro rata by

the persons decreed by the court to have interests in the properties subject thereto.

Other objections raised by the defendant are fully covered by the views hereinbefore expressed and need not be discussed in further detail.

The judgment is affirmed.

Griffin, P. J., and Mussell, J., concurred.